No. 22610.

JULIO MAES *v.* THE PEOPLE OF THE STATE OF COLORADO.
(441 P.2d 1)

Decided May 20, 1968.

DONALD P. MACDONALD, JIM R. CARRIGAN, ERNEST U. SANDOVAL, L. THOMAS WOODFORD, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JAMES F. PAMP, Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

JULIO MAES, hereinafter referred to as the defendant or Julio, was accused of the first degree murder of one Isidor Vigil. Upon trial to a jury he was found guilty of murder in the second degree and sentenced to serve a term in the state penitentiary of not less than twenty nor more than thirty years.

At the close of the People's case, and at the conclusion of all the evidence counsel for the defendant again made a motion for a directed verdict of not guilty. The ground upon which the motions were made was that, as a matter of law, the evidence showed that defendant acted in self-defense. The motions were denied. While other points are also urged as grounds for reversal of the judgment we need not consider them for the reason that under the circumstances shown by the record in this case the judgment must be reversed for lack of sufficient evidence to sustain it.

The defendant was in a place known as K.P. Tavern shortly after noon on January 1, 1966; he was assaulted in that tavern by the deceased and other members of his family and in the course of that assault defendant received a bloody nose. He left the tavern with the statement that he was "going to get some back-up" and would be back. What he meant by "back-up" is not known except as it may be interpreted by the fact that he returned shortly thereafter with two police officers who

investigated the assault committed upon the defendant by Pat Vigil, father of Isidor and Ernest Vigil, and Art Mestas. One of the deputy sheriffs testified, *inter alia:*

"Q. When you left the tavern after you talked to these people, were you satisfied in your own mind that Isidor, Ernie and Arthur weren't going to bother Julio any more?

"A. That's what they commented on, that they were gonna have one or two more drinks, then go back to Denver.

"Q. Did you ask them to leave Julio alone at that time?

"A. I asked if there was gonna be any more trouble, and all of them says no.

"Q. Was Pat Vigil present?

"A. They were all present.

"Q. And they all assured you they were not gonna bother Julio any more, is that right?

"A. Yes."

Julio then went home, cleaned up, changed his shirt, and watched a football game on television. His mother asked him to go down and get his father Ed Maes to come home to dinner. He had already put his father's revolver in his pocket. He went directly to a different tavern, the Sunset, where he found his father and delivered the message from his mother. His father said they would go home as soon as he finished the beer which he was drinking. Julio sat down and started drinking a bottle of 7-Up waiting to go home with his father. Meanwhile Pat Vigil, father of Ernest and Isidor Vigil, appeared at the K.P. Tavern and beckoned Art Mestas, Ernest Vigil and Isidor Vigil, the deceased, to come with him. They followed him into the Sunset Tavern and they all walked over to the booth where Julio was sitting and Pat Vigil hit Julio a blow in the face with his fist. A general fight ensued in which Ernest Vigil, Art Mestas, and Pat Vigil admittedly participated under circumstances which could lead only to the conclusion on the part of Julio that he was being set upon

by at least three assailants. There is some question as to whether the deceased entered the action until about the time Julio was attempting to get out the door. Julio was positive however that the deceased, Isidor, entered with the other three men and took part in the beating he took before any shot was fired. The defendant was twenty years old and weighed only 130 pounds.

Julio somehow made his way out of the booth and was obviously trying to get out of the tavern. He drew the gun that he had in his pocket and fired a shot which struck Art Mestas, wounding him, but not seriously. Julio made his way out the door of the tavern and the four men followed him and the deceased then actively engaged in the affray. There was scuffling outside and Julio fired another shot which fatally wounded Isidor Vigil. The defendant broke away and ran toward home. Ernest Vigil gave chase although wounded by the first shot but Julio made his escape and went home where he was later taken into custody by the officers.

 The language of this court in *People v. LaVoie*, 155 Colo. 551, 395 P.2d 1001, is fully applicable to the facts disclosed by the record in this case. From that opinion we quote the following:

"* * * Under the law and the circumstances disclosed by the record, defendant had the right to defend himself against the threatened assault of those whose lawlessness and utter disregard of his rights resulted in the justifiable killing of one of their number."

From *People v. Urso*, 129 Colo. 292, 269 P.2d 709, we quote the following:

"* * * It is our opinion, and we so state, that if it is within the power of a trial court to set aside a verdict, not supported by competent legal evidence, then it is equally within the province and power of the court to prevent such a verdict ever coming into existence. * * *"

The motion for directed verdict made at the close of all the evidence should have been sustained.

The judgment is reversed and the cause remanded

with directions to dismiss the action and discharge the defendant from custody. Petition for rehearing, if any is filed, shall be filed within five (5) days.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE GROVES not participating.