The PEOPLE of the State of
Colorado, Petitioner,

v.

Bruce Wilson JONES, Jr., Respondent.

No. 81SC260.

Supreme Court of Colorado,
En Banc.

Jan. 9, 1984.

Rehearing Denied Jan. 30, 1984.

**10**

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Morgan Rumler, Nathan B. Coats, Laura E. Udis, Asst. Attys. Gen., Denver, for petitioner.

Miller & Gray, P.C., William R. Gray, Boulder, for respondent.

QUINN, Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Jones*, 635 P.2d 904 (Colo.App.1981), which reversed a second degree assault conviction [1] against the defendant, Bruce Wilson Jones, Jr., and remanded the case for a new trial. The court of appeals concluded that the trial court did not adequately instruct the jury on self-defense in a multiple assailant situation, that the court unduly restricted defense counsel's cross-examination of the victim about bias, motive, or interest as well as about matters relating to the witness's direct examination, and that it erroneously prohibited defense counsel from offering evidence of specific instances of the victim's prior acts of violence on the issue of initial aggression. We affirm in part, reverse in part, and remand for a new trial.

I.

The information charged that the defendant, on September 21, 1978, in Larimer County, Colorado, with the intent to cause bodily injury to another, did cause or attempt to cause such injury to David G. Frisco by means of a deadly weapon, a blackjack.[2] The defendant entered a not guilty plea and trial to a jury commenced

---

**1.** Section 18–3–203(1)(b), C.R.S.1973 (1978 Repl. Vol. 8).

**2.** Jones also was charged with possession of an illegal weapon, a blackjack, in violation of sec-

tion 18–12–102(2) and (4), C.R.S.1973 (1982 Supp.). The jury returned a not guilty verdict to this charge and, consequently, this aspect of the case is not before us.

on August 29, 1979, before the effective date of the Colorado Rules of Evidence.[3]

Several days prior to the alleged assault, the defendant, who was a police officer in Longmont, Colorado, placed an ad in a newspaper offering to sell his 1970 Ford Maverick automobile. Frisco, who managed the Golden West Motors used car lot near Berthoud, Colorado, as well as a nearby convenience and sporting goods store, contacted the defendant and went to Longmont to look at the Maverick. On September 16, Frisco returned to Longmont for a second inspection of the vehicle and agreed to purchase it for $300. Frisco gave the defendant a $300 check purportedly signed by "Ronne Frisco," his mother. The defendant then delivered the Maverick, the car keys, and the title to Frisco. The car apparently developed mechanical problems several minutes later, and Frisco returned the vehicle to the defendant's residence and demanded the return of the $300 check. Upon the defendant's refusal, Frisco left the car at the defendant's residence and returned to Berthoud with the car keys and title. On September 18, Frisco telephoned the defendant, but the two failed to agree on an exchange of the check for the car keys and title.

On September 21, the defendant, with a blackjack and pistol on his person,[4] went to Frisco's place of employment to get the car keys and title from him. When the defendant arrived, Frisco was outside watching Gerry Kukus repair a truck with the help of his two adult sons, Craig and Kevin Kukus. After Frisco entered the store he and the defendant immediately started arguing over the Maverick. What precisely happened after this point is a matter of substantial disagreement between Frisco, the prosecution's principal witness, and the defendant.

According to Frisco, he had been pointing a finger in the defendant's face during the argument and the defendant, after first trying to bite Frisco's finger, drew a blackjack from behind his back and beat him on the head several times. Frisco struck back, and the defendant fired a round from his pistol. Both Frisco and the Kukuses then subdued the defendant, took the pistol from him, and called the police.[5]

The defendant, on the other hand, offered a contrary version of the altercation. It was his testimony that Frisco initially prevented him from leaving the store by blocking his exit and then called to the Kukuses for assistance. At this point, according to the defendant, Frisco first pointed his finger into the defendant's face and then delivered a blow to the side of the defendant's face with his fist. Frisco and the Kukuses then attacked him. One of the Kukuses twisted the defendant's arm while someone else struck him in the side. The defendant drew out his blackjack to protect himself from the assailants and struck one of them on the head, but because he had lost his glasses in the fight he could not identify the person he hit. The defendant then lost his grip on the blackjack. One of the assailants at this point attempted to reach the defendant's belt area for his pistol, and as the defendant struggled with him over the gun, it accidentally discharged. Frisco and the Kukuses eventually forced the defendant out of the store, and he waited in his vehicle for the police.

---

3. The Colorado Rules of Evidence became effective on January 1, 1980.

4. The defendant testified that he was armed in this manner because he later planned to try to locate a fugitive in Longmont, Colorado, and, if unsuccessful, to then go to a practice range for target shooting. In addition to wearing a bullet proof vest under his shirt, the defendant had a shotgun and large quantities of ammunition and practice targets in the vehicle that he drove to Berthoud.

5. After the defendant was overpowered in the store, he went outside and sat in his vehicle to wait for the police. Frisco admitted that he fired two shots into the left front tire of the vehicle during this waiting period because he believed that the defendant was either about to leave the scene or drive his vehicle into the store.

The evidentiary issues raised in this case center on the trial testimony of Frisco. In the course of his direct examination, Frisco admitted that he had previously pled guilty to burglary or theft and had been granted a deferred sentence on his plea.[6] This disposition, Frisco continued, would result in no criminal record as long as he remained "a law abiding citizen" during the period of deferral. Frisco also testified on direct examination that the $300 check given to the defendant had been drawn on his used car business account and that he stopped payment the day after he had issued it to the defendant.

Defense counsel, on cross-examination, established that Frisco also had been charged with two misdemeanor offenses as a result of his encounter with the defendant,[7] and sought to inquire about a recent conviction for misdemeanor menacing.[8] By offer of proof defense counsel made a showing that, based on Frisco's recent conviction for menacing, there was presently pending a prosecutorial motion to revoke his deferred sentence and to impose sentence for felony theft. It was defense counsel's contention that his proffered cross-examination would be probative of bias, motive, or interest on the part of Frisco to assist the prosecution in convicting the defendant in order to obtain favorable prosecutorial consideration on his own pending criminal matters. The trial court, however, prohibited any inquiry into the revocation motion other than to permit defense counsel to ask Frisco if he was testifying out of an expectation of favorable treatment by the prosecution. When so asked, Frisco denied any such expectation.

Defense counsel also sought to cross-examine Frisco about details relating to the $300 check—the account on which it was drawn, the status of the account, and whether Frisco or his mother signed the check and placed the stop payment order. Defense counsel advised the court outside of the presence of the jury that he was attempting to establish the following facts: that the checking account on which the $300 check was drawn was Frisco's mother's account; that it was the mother, rather than Frisco, who had stopped payment on the check; and that there were insufficient funds in the account to pay the check upon presentation. Defense counsel also informed the court that, if necessary, he was prepared to prove these facts through the testimony of a bank officer. It was defense counsel's contention that Frisco's admission of these facts might well explain his initial use of force against the defendant in order to secure the return of the check improperly issued by him in the first instance. The trial court prohibited defense counsel from cross-examining Frisco on these matters because, in its view, they were irrelevant to the issues of the case.

Defense counsel also attempted to cross-examine Frisco about specific instances of assaultive conduct, including the menacing conviction, in order to show that it was Frisco, not the defendant, who was the initial aggressor in the altercation. Defense counsel advised the court that he also intended to call several witnesses to prove these prior assaultive acts, in the event Frisco denied them on cross-examination, and also to show Frisco's reputation for violence in the community. The trial court prohibited cross-examination into the specific instances of Frisco's assaultive behavior and ruled that any evidence of Frisco's prior conduct or reputation for violence would not be admitted because there was no evidence showing the defendant's awareness of either the prior instances of violence by Frisco or his reputation for

---

6. Section 16–7–403, C.R.S.1973 (1978 Repl.Vol. 8), authorizes the court to accept a guilty plea and to place the defendant under the supervision of the probation department for a period of two years on the condition that the guilty plea may be withdrawn upon successful compliance with the probationary conditions.

7. The precise misdemeanor charges filed against Frisco are not disclosed in the trial testimony, although they did arise out of his firing into the tires of the defendant's vehicle after the altercation.

8. Section 18–3–206, C.R.S.1973 (1978 Repl.Vol. 8).

violence as of September 21, 1978, the date of the offense.

At the close of the evidence the defendant tendered the following instruction on self-defense:

"It is an affirmative defense to the crime of Second Degree Assault that the defendant used the physical force upon another person:

(1) In order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by David Frisco or his associates, and

(2) He used a degree of force which he reasonably believed to be necessary for that purpose."

The court refused the instruction, concluding that the defendant's right of self-defense was restricted to Frisco and did not extend to Frisco's associates.[9] Thus, the court's instruction on self-defense, to which the defendant objected, omitted any reference to the defendant's right to use force in order to defend against Frisco's associates.

The jury returned a guilty verdict to assault in the second degree. After the court of appeals reversed the defendant's conviction and ordered a new trial, we granted the People's petition for certiorari.

## II.

■ The People initially contend that the trial court properly instructed the jury on self-defense and that the defendant's tendered instruction contained an incorrect statement of the law on self-defense. In reversing the defendant's conviction the court of appeals concluded: "According to the instruction which was given, any apprehension of injury which derived from the

other people in the group could not be used to justify defendant's striking Frisco, and it, therefore, improperly restricted defendant's right to assert self-defense in a multiple assailant situation." 635 P.2d at 906. We agree with the conclusion reached by the court of appeals.

■ Section 18-1-704, C.R.S.1973 (1978 Repl.Vol. 8), provides in pertinent part as follows:

"(1) ... [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.

\* \* \* \* \* \*

"(3) Notwithstanding the provisions of subsection (1) of this section, a person is not justified in using physical force if:

\* \* \* \* \* \*

(b) He is the initial aggressor ...."

This statute reflects what has long been the settled law of this jurisdiction, namely, reasonable belief rather than absolute certainty is the touchstone of self-defense. As stated by the court in *Young v. People*, 47 Colo. 352, 355, 107 P. 274, 275–76 (1910):

"It is fundamental that the law of self-defense, which is emphatically a law of necessity, involves the question of one's right to act upon appearances, even though such appearances may prove to have been deceptive; also the question of whether the danger is actual or only apparent, and as well the fact that actual danger is not necessary, in order to justi-

9. In rejecting the defendant's tendered instruction on self-defense, the trial court stated:

"[I]t is the Court's analysis of this matter that defendant['s use of] physical force upon a person has to be in response to the use or imminent use of unlawful physical force by that person. That was the reason for the Court not giving the one tendered by the defendant which adds 'or his associates.'

"Under the facts of this matter as viewed by the Court at this time the initial physical con-

tact between this defendant and the witness David Frisco occurred and it was thereafter that the other persons did enter into the situation.

"It is the defendant's testimony that he did not pull or use Exhibit D [the blackjack] until the others joined in in what he believed was not to break up the matter but to assist the witness Frisco in doing bodily injury to himself and that he was afraid of being injured and that is why he pulled it."

fy one in acting in self-defense. Apparent necessity, if well grounded and of such a character as to appeal to a reasonable person, under like conditions and circumstances, as being sufficient to require action, justifies the application of the doctrine of self-defense to the same extent as actual or real necessity."

*Accord, e.g., People v. Tapia,* 183 Colo. 141, 515 P.2d 453 (1973); *Maes v. People,* 166 Colo. 15, 441 P.2d 1 (1968); *People v. La Voie,* 155 Colo. 551, 395 P.2d 1001 (1964). Thus, the totality of circumstances, including the number of persons reasonably appearing to be threatening the accused, must be considered by the trier of fact in evaluating the reasonableness of the accused's belief in the necessity of defensive action and the reasonableness of force used by him to repel the apparent danger.[10]

The defendant's testimony was clearly to the effect that Frisco and the Kukuses were about to attack him and that only after Frisco struck the first blow and the Kukuses entered the encounter did he use his blackjack in self-defense. This testimony adequately raises the issue of self-defense so as to justify an appropriate instruction advising the jury of the defendant's right to use reasonable force necessary to repel Frisco and the Kukuses so long as he reasonably believed them to be acting in concert in using unlawful physical force against him. The trial court's instruction limited the defendant's right to take defensive action only against Frisco on the basis of a reasonable belief that Frisco was about to use imminent physical force against him. The court's self-defense instruction in this respect deprived the defendant of any right to use physical force against Frisco as a means of repelling the assaultive actions of those who were assisting him in attacking the defendant. Thus, under the court's instruction, the defendant's apprehension of physical violence from others acting in concert with his principal assailant became an irrelevant consideration and thereby vitiated the defendant's right to act upon reasonable appearances in a multiple assailant attack.

Although the defendant's tendered instruction could have more clearly stated the legal principle relating to the defendant's right to defend himself against multiple assailants,[11] it was nonetheless sufficient to place the court on notice of its responsibility to correctly instruct the jury on an accurate statement "on the subject of self-defense from [the defendant's] standpoint." *Young v. People, supra* at 355, 107 P. at 275; *see also, e.g., People v. Moya,* 182 Colo. 290, 512 P.2d 1155 (1973); *Nora v. People,* 176 Colo. 454, 491 P.2d 62 (1971); *Zarate v. People,* 163 Colo. 205, 429 P.2d 309 (1969); *Leonard v. People,* 149 Colo. 360, 369 P.2d 54 (1962). A new trial is accordingly required.

### III.

Because a new trial is necessary, we elect to address three evidentiary issues in order to give necessary direction to the trial court should these same issues arise again.

### A.

The first ruling relates to the trial court's refusal to permit defense counsel to

---

10. The People argue that because section 18-1-704(1), C.R.S.1973 (1978 Repl.Vol. 8), permits a person to defend himself by using physical force upon "another person," rather than persons, the trial court properly refused to include the reference to Frisco's "associates" in the self-defense instruction. We disagree with this argument not only because this interpretation is contrary to our prior cases involving the use of self-defense in multiple assailant situations, *e.g., Maes v. People,* 166 Colo. 15, 441 P.2d 1 (1968); *People v. La Voie,* 155 Colo. 551, 395 P.2d 1001 (1964), but also because in interpreting statutes "[t]he singular includes the plural," section 2-4-102, C.R.S.1973 (1980 Repl.Vol. 1B).

11. The disjunctive reference to "Frisco or his associates" possibly could have led the jury to have incorrectly concluded that the defendant's use of force against Frisco was justified if only the Kukuses were involved in the assault against the defendant. This ambiguity in the tendered instruction could have been remedied by substituting for "Frisco or his associates" the following: "Frisco or those whom the defendant reasonably believed were acting in concert with Frisco in the use or imminent use of unlawful physical force against the defendant."

cross-examine Frisco about the relationship between pending misdemeanor charges and a recent menacing conviction, on the one hand, and the pending prosecutorial motion to revoke the deferred judgment and sentence on felony theft, on the other. The People argue that the trial court correctly prohibited defense counsel from cross-examining Frisco on these matters. We agree with the court of appeals that the trial court erred in prohibiting defense counsel from exploring this area of inquiry with Frisco.

■ Basic principles of cross-examination relating to the bias, interest, or motive of a testifying witness provide legal context for our resolution of this matter. "The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 354 (1974), *quoting* 3A J. Wigmore, *Evidence* § 940 at 775 (Chadbourn rev. 1970). While evidence of pending misdemeanor charges is not admissible as bearing upon the general credibility of a witness, section 13–90–101, C.R.S. 1973, "[t]his rule was never intended to prohibit testimony tending to show motive, bias, prejudice or interest of a witness in the outcome of the trial." *People v. Bowman*, 669 P.2d 1369, 1375 (Colo.1983), *quoting People v. King*, 179 Colo. 94, 98, 498 P.2d 1142, 1144 (1972). On the contrary, the need for a probing inquiry into a witness's partiality is particularly necessary when a prosecution witness has been charged with criminal offenses and his testimony might be influenced by some expectation of leniency with respect to his own criminal difficulties. *See People v. Bowman, supra.*

■ Frisco had testified on direct examination that a condition of his deferred judgment and sentence required him to be a "law-abiding citizen." He further admitted on cross-examination that he faced prosecution on two misdemeanor charges arising from the fight with the defendant, and had recently been convicted of misdemeanor menacing, but denied expecting any consideration from the prosecution in return for his testimony. The trial court limited defense counsel to asking Frisco the general question whether he was testifying out of an expectation of favorable consideration by the prosecution, an expectation which Frisco denied. The restrictive nature of the court's ruling prevented defense counsel from establishing an adequate factual basis from which the jury might have inferred the existence of an actual motive or interest on Frisco's part to testify against the defendant as well as the reason for his alleged partiality—favorable prosecutorial consideration on criminal cases pending against himself. Where, as here, the ultimate resolution of the case hinged on the jury's assessment of the credibility of witnesses, the trial court erred in prohibiting defense counsel from putting to Frisco specific questions reasonably calculated to expose the existence of and the reason for his purported partiality toward the prosecution.

### B.

■ We next consider the trial court's ruling that prohibited defense counsel from cross-examining Frisco about the check apparently signed by "Ronne Frisco" and on which Frisco had admitted stopping payment. We agree with the court of appeals that the trial court erred in its ruling.

Frisco opened the door to cross-examination about the check by testifying on direct examination that he had written the check and subsequently stopped payment on it. It was appropriate for defense counsel to test on cross-examination the truthfulness of Frisco's direct examination by further exploring with him the issuance of the check and the stop payment order. *See, e.g., People v. Mejia, Sr.*, 188 Colo. 120, 534 P.2d 779 (1975); *Tucker v. People*, 136 Colo. 581, 319 P.2d 983 (1958). Moreover, since the purpose of the defendant's encounter with Frisco was to exchange the check for the car keys and title, we are satisfied, in light of defense counsel's offer of proof on the nature and purpose of his

cross-examination, that the circumstances surrounding the issuance of the check were not collateral to the issues of the case. *See generally Kreiser v. People,* 199 Colo. 20, 604 P.2d 27 (1979); *Bishop v. People,* 165 Colo. 423, 439 P.2d 342 (1968).

### C.

■ We turn to the People's contention that the court of appeals erroneously held that the defendant should have been permitted to offer evidence of Frisco's prior acts of violence which were unknown to the defendant at the time of the alleged assault on September 21, 1978. We agree with the People that such evidence was properly excluded and should not be admitted on retrial.

In *People v. Ferrell,* 200 Colo. 128, 130, 613 P.2d 324, 326 (1980), we held that evidence of prior violent acts by the victim was admissible only if "the defendant knew of the victim's prior violence at the time of the homicide." *Accord, e.g., People v. Lyle,* 200 Colo. 236, 613 P.2d 896 (1980); *People v. Burress, III,* 183 Colo. 146, 515 P.2d 460 (1973). The court of appeals acknowledged this rule as controlling when the defendant's state of mind was in issue. It was the court of appeals' opinion, however, that evidence of specific instances of Frisco's violence, even though unknown to the defendant, is admissible under C.R.E. 404(a)(2) and 405(b) in order to "show a pertinent character trait of the victim from which it may be inferred that he was the initial aggressor." 635 P.2d at 907. Since the Colorado Rules of Evidence were not yet effective at the first trial, the trial court properly excluded such evidence in the absence of any showing of the defendant's knowledge of Frisco's prior violence. The issue we address here is whether the Colorado Rules of Evidence authorizes the admission of such evidence on retrial.

C.R.E. 404 addresses the admissibility of character evidence, while C.R.E. 405 delineates the methods of proving character. C.R.E. 404(a)(2), which is pertinent to the retrial, states as follows:

"(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

\*   \*   \*   \*   \*   \*

"(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused . . . ."

C.R.E. 404(a)(2) is identical to Fed.R.Evid. 404(a)(2). The Advisory Committee's Note to Fed.R.Evid. 404 discusses two basic situations in which character evidence may be admissible: (1) where character is itself an essential element of a crime, claim, or defense [12] and (2) where character evidence is used circumstantially "for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his character." Fed.R.Evid. 404 Advisory Committee Note (codified in the Appendix to 28 U.S.C. (1976)).

■ The Colorado law of self-defense requires that there be some evidence showing that the victim, as the initial aggressor, used or threatened the imminent use of unlawful physical force against the defendant. Section 18–1–704(1) and (3)(b), C.R.S. 1973 (1978 Repl.Vol. 8). Evidence of the victim's character trait for violence is legally relevant to the issue of self-defense because the inference that the victim was the initial aggressor is made more probable with the evidence than without it. *See* C.R.E. 401. The central question in this case, however, is not the relevancy of the character evidence, but the proper method of proving the character trait in issue. C.R.E. 405 provides appropriate guidance for resolving this question.

C.R.E. 405 states as follows:

---

**12.** The Advisory Committee Note cites as illustrations of character as an element of a crime, claim, or defense the following: "the chastity of the victim under a statute specifying her chasti-ty as an element of the crime of seduction, or the competency of a driver in an action for negligently entrusting a motor vehicle to an incompetent driver."

"(a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

"(b) Specific instances of conduct. Except as limited by §§ 16–10–301 and 18–3–407, C.R.S.1973 (Volume 8, 1978 Repl. Vol.) [13], in cases in which character or a trait of character of a person is an essential element of a charge, claim or defense, proof may also be made of specific instances of his conduct."

While C.R.E. 405(a) follows previous Colorado case law in authorizing proof of character by reputation or opinion evidence, *e.g., People v. Futamata*, 140 Colo. 233, 343 P.2d 1058 (1959); *Brindisi v. People*, 76 Colo. 244, 230 P. 797 (1924), rule 405(b) expands on the method of proving character by allowing evidence of specific instances of conduct to prove a character trait essential to a charge or defense. Because proof of character by specific instances of conduct has a great potential for prejudice, confusion, and surprise, the Advisory Committee to the Federal Rules of Evidence recommends that this type of evidence should be confined to those cases in which character, in the strict sense, is directly in issue as an essential element of a crime, claim, or defense. Fed.R.Evid. 405 Advisory Committee Note. When, however, character evidence is used only circumstantially, then "proof may be only by reputation and opinion." *Id.* A cited example of the latter situation is "evidence of a violent disposition to prove that the person was the aggressor in an affray." Fed.R.Evid. 404 Advisory Committee Note.

■ In this case the defendant's proffered evidence relating to specific instances of Frisco's prior violence did not satisfy the standard of C.R.E. 405(b) because Frisco's alleged character trait for violence was not an essential element of the defendant's claim of self-defense. *E.g., Halfacre v. State*, 277 Ark. 168, 639 S.W.2d 734 (1982); *State v. Montoya*, 95 N.M. 433, 622 P.2d 1053 (Ct.App.1981); *see State v. Doherty*, 437 A.2d 876 (Me.1981). If, of course, Frisco's prior acts of violence had been known to the defendant at the time of the offense in question, then they would have been admissible as direct evidence of an essential element of self-defense, namely, the reasonableness of the defendant's belief in the imminent use of unlawful physical force against him. *State v. Ewing*, 97 N.M. 235, 638 P.2d 1080 (1982); 2 D. Louisell & C. Mueller, *Federal Evidence* § 139 at 105–08 (1978); *see generally People v. Lyle, supra; People v. Burress, III, supra.* The defendant, however, was admittedly without knowledge of these prior acts of violence at the time of the offense, and, consequently, they were offered only as circumstantial evidence that Frisco was the initial aggressor. Under these circumstances, proof of Frisco's character or character trait for violence must be confined to reputation or opinion testimony only. The court of appeals, therefore, erred in holding that evidence of specific instances of Frisco's prior acts of violence should have been admitted to establish him as the initial aggressor. However, reputation or opinion evidence of Frisco's character may be admitted under C.R.E. 405(a) as circumstantial evidence of Frisco's initial aggression notwithstanding the defendant's lack of knowledge about Frisco's reputation at the time of the offense.[14]

---

**13.** Section 16–10–301, C.R.S.1973 (1978 Repl. Vol. 8), governs the admissibility of similar acts or transactions of the defendant in sex offense prosecutions in order to show such factors as design or scheme, identity, ·or intent. Section 18–3–407, C.R.S.1973 (1978 Repl.Vol. 8), generally prohibits the admission of specific instances of a sexual victim's prior or subsequent sexual conduct, as well as opinion or reputation evidence of the victim's sexual conduct, except under narrowly restricted conditions set out in the statute.

**14.** The trial court under C.R.E. 403 may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The judgment is affirmed in part and reversed in part, and the cause is remanded to the court of appeals with directions to return the case to the district court for a new trial in accordance with the views herein expressed.

KIRSHBAUM, J., does not participate.