The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Anthony Douglas RILEY, a/k/a Anthony Douglas Pryor–Riley, Defendant–Appellant.

No. 08CA0157.

Colorado Court of Appeals, Div. V.

Oct. 1, 2009.

Rehearing Denied Nov. 19, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Stephen Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Anthony Douglas Riley, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted reckless manslaughter, reckless second degree assault, and a crime of violence. We affirm.

On or about January 7, 2006, N.P. and her brother, G.V., were shopping at EZ Market in Aurora. Defendant was also there. Defendant testified that while waiting in line at the back of the store, N.P. provocatively touched him from "the back on [his] butt." N.P. testified that she accidentally bumped into defendant with her arm or shoulder. In any event, when N.P. apologized to defendant, defendant turned around and told her, "Bitch, you got to pay to touch me." Defendant testified that N.P. began "putting on a scene, getting loud inside the store," and to defuse the situation, he walked outside to the front of the store to wait for a friend. Meanwhile, N.P. found G.V. in the front of the store and told him what had happened.

Shortly thereafter, N.P. and G.V. walked out of the store near where defendant was standing. N.P. testified that a verbal altercation ensued between defendant and G.V. and that G.V. said to defendant, "What's up nigga?" Defendant testified that G.V. approached him and said, "What's up, Nigger, you got a problem?" Defendant felt this remark "was real confrontational" and responded, "I'm not your Nigger." Defendant testified that G.V. then said, "Whatever, Cuz, I get down and she do too," referring to N.P. Defendant stated that, in this context, he interpreted the term "cuz" to mean an "invitation to a confrontation."

A hostile argument ensued between defendant and G.V., and they began "wrestling, tussling." According to defendant, as they were wrestling, G.V. told N.P. to "grab the heat from the truck." Defendant believed the term "heat" meant a gun, and so he took a knife out of his pocket and "swung it" at G.V. The knife hit G.V.'s neck, leaving a wound, but no damage to any vital structures.

According to N.P., after defendant stabbed G.V. in the neck, G.V. told N.P. to "[r]un for [her] life," but instead she walked toward defendant, yelling at defendant to leave G.V. alone and to come get her. Defendant tried to stab N.P. with the knife, but only the tip of the knife "touched" her neck. Defendant hit her several times in the head and face until she was able to run away. Defendant testified that he fled the encounter when he heard G.V. again tell N.P. "to grab the heat from the truck."

Defendant was charged with attempted second degree murder (G.V.), first degree assault (G.V.), menacing (N.P.), attempted second degree assault (N.P.), and crime of violence. The jury convicted him of the lesser included charges of attempted reckless manslaughter (G.V.) and reckless second degree assault (G.V.) and the crime of violence sentence enhancer. The jury acquitted defendant of all other charges. Defendant was

sentenced to concurrent three-year sentences in the Department of Corrections.

This appeal followed.

## I. Jury Instructions on Self–Defense

Defendant contends that the trial court did not instruct the jury accurately on the law of self-defense. Specifically, he asserts that the trial court erred in refusing two of his tendered self-defense instructions and in misstating the law of self-defense during defense counsel's closing arguments. We perceive no reversible error.

■■■ The trial court must properly instruct the jury on all matters of law. *People v. Phillips*, 91 P.3d 476, 480 (Colo.App.2004). Jury instructions must be read and considered as a whole, and there is no reversible error if the instructions adequately inform the jury of the law. *People v. Galimanis*, 944 P.2d 626, 630 (Colo.App.1997). Jury instructions framed in the language of the relevant statutes are generally sufficient and proper. *People v. Dago*, 179 Colo. 1, 4, 497 P.2d 1261, 1262 (1972); *Phillips*, 91 P.3d at 483.

■■■ It is unnecessary to give instructions that are already encompassed in other instructions. *Phillips*, 91 P.3d at 483. Although a defendant has a right to have his or her theory of defense embodied in the instructions given to the jury, the instructions need not include the particular language tendered by the defendant. *People v. Gracey*, 940 P.2d 1050, 1054 (Colo.App.1996). No error occurs when the defendant's theory could be argued under the instructions, considered as a whole, given by the court. *People v. Trujillo*, 83 P.3d 642, 645 (Colo.2004).

■■■ The trial court has the discretion to determine whether additional jury instructions should be given. If the instructions properly state the law and fairly and adequately cover the issues presented, then there is no reversible error absent manifest prejudice or a clear showing of abuse of discretion. *People v. Renfro*, 117 P.3d 43, 48 (Colo.App.2004). It is only where the existing instructions do not fairly and adequately cover the issues that the trial court errs in rejecting a tendered, clarifying instruction.

*People v. Silva*, 987 P.2d 909, 917 (Colo.App. 1999).

■■■ Unless the failure to give an instruction amounts to an error of constitutional dimension, we will review for harmless error rather than for constitutional harmless error. *Compare People v. Miller*, 113 P.3d 743, 748 (Colo.2005), *with Auman v. People*, 109 P.3d 647, 665 (Colo.2005); *see also Griego v. People*, 19 P.3d 1, 8 (Colo.2001). Here, we will review the trial court's decision to reject defendant's tendered instruction under a general harmless error standard. *See Crider v. People*, 186 P.3d 39, 44 (Colo.2008).

■■■ Initially, we note that self-defense is not an affirmative defense to attempted reckless manslaughter or reckless second degree assault. *See People v. Fink*, 194 Colo. 516, 518, 574 P.2d 81, 83 (1978); *People v. Roberts*, 983 P.2d 11, 13 (Colo.App.1998). Nevertheless, defendants charged with these crimes who present evidence suggesting that they acted in self-defense are entitled to have the jury properly instructed with respect to that defense. *See Roberts*, 983 P.2d at 14.

Here, the trial court instructed the jurors using the standard instruction for self-defense (Instruction No. 20):

It is an affirmative defense to the crimes of Attempted Second Degree Murder, First Degree Assault, Second Degree Assault Causing Bodily Injury, Menacing, Attempted Second Degree Assault and Attempted Third Degree Assault that the defendant used physical force upon another person

1. In order to defend himself or a third person from what he reasonably believed to be the imminent use of unlawful physical force by the victim, and

2. the defendant used the degree of force which he reasonably believed to be necessary for that purpose.

Self defense is not an affirmative defense to the crimes of Attempted Manslaughter–Reckless, Attempted Second Degree Assault–Reckless.... However, you may consider the evidence presented on this issue as it relates to the question of whether the defendant acted "recklessly"

... as required for the commission of those crimes.

*See* CJI–Crim. 7:16 (1983); *see also* § 18–1–704, C.R.S.2009.

The trial court also gave the following additional jury instructions relating to self-defense:

Instruction No. 21 instructed the jury on apparent necessity:

When a person has reasonable grounds for believing, and does in fact actually believe, that danger of his being killed or receiving great bodily injury is imminent, he may act on such appearance and defend himself. A person may act on such appearances, even to the extent of taking a human life when necessary, although it may turn out that the appearances were false, or although he may have been mistaken as to the extent of the actual danger.

Apparent necessity, if well grounded and of such a character as to appeal to a reasonable person under similar conditions and circumstances, as being sufficient to require action, justifies the application of self-defense to the same extent as actual or real danger.

Instruction No. 22 stated: "[Defendant] is entitled under the law to exercise his right to self-defense without attempting to retreat or flee. A person has the right to stand his ground when confronted by another who [sic] he reasonably believes to be threatening or assaulting him."

Finally, Instruction No. 23 instructed the jury on the initial aggressor exception:

A person is not justified in using physical force if:

1. with the intent to cause bodily injury to another person he provokes the use of unlawful physical force by that other person, or

2. he is the initial aggressor, except that the use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person the intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force.

*See* CJI–Crim. 7:18 (1983); *see also* § 18–1–704(3), C.R.S.2009.

A. Self–Defense and Multiple Assailants

Defendant contends that the trial court erred in refusing to instruct the jury, as he requested, that he had a right to defend himself against multiple assailants. Although we conclude that the trial court erred in refusing to give defendant's tendered instruction, we perceive that any error was harmless and there is no reasonable probability that the error led to defendant's conviction.

Here, defendant tendered the following instruction on multiple assailants:

The totality of the circumstances, including the number of person[s] reasonably appearing to be threatening the defendant, must be considered by the jury in evaluating the reasonableness of the defendant's belief in the necessity of defensive action, and the reasonableness of the force used by him to defend against the apparent danger.

The trial court rejected the instruction, finding that it "really gets the Court ... into the position of not just telling [the jury] the instructions of law, but commenting on the evidence" and that "this is something that you can tell them, but we have already told the jury that the defendant has the right to act on appearances."

In *People v. Jones,* 675 P.2d 9 (Colo.1984), the defendant was convicted of assaulting the victim with a blackjack. The defendant claimed that he did so to defend himself against the victim and the victim's associates, who, defendant believed, were about to attack him. *Id.* at 11, 14. At the close of the evidence, the defendant tendered a self-defense instruction that stated, in pertinent part,

It is an affirmative defense to the crime of Second Degree Assault that the defendant used the physical force upon another person: (1) In order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by [the victim] *or his associates.*

*Id.* at 13 (emphasis added). The trial court rejected this instruction, concluding that the defendant's use of force had to be in response to the use or imminent use of unlawful physical force by the victim. *Id.* at 13 n. 9.

The supreme court concluded that this ruling was incorrect, stating that

> the totality of circumstances, including the number of persons reasonably appearing to be threatening the accused, must be considered by the trier of fact in evaluating the reasonableness of the accused's belief in the necessity of defensive action and the reasonableness of force used by him to repel the apparent danger.

*Id.* at 14. The court further concluded that the trial court's self-defense instruction erroneously deprived the defendant of any right to use physical force against the victim as a means of repelling the assaultive actions of those who were assisting the victim in attacking the defendant. *Id.* This, the court determined, "vitiated the defendant's right to act upon reasonable appearances in a multiple assailant attack." *Id.*

In so holding, the supreme court noted that the instruction proposed by the defendant, which referred to "[the victim] *or* his associates" might lead to juror confusion. *Id.* at 14 n. 11 (emphasis added). The court observed, however, that any such confusion could have been remedied by substituting the language, "[the victim] or those whom the defendant reasonably believed were acting in concert with [the victim] in the use or imminent use of unlawful physical force against the defendant." *Id.*

In *Beckett v. People,* 800 P.2d 74 (Colo. 1990), the defendant became involved in an altercation with the victim and some of the victim's friends. The defendant said to one of the victim's friends, "You're this close to death." The defendant then pulled out a gun, pointed it at the victim, and said, "This is all it takes, pal." *Id.* at 75.

The defendant was subsequently charged with felony menacing. At trial, he explained his conduct by noting that the victim and the victim's friends were large persons, that they were angry, and that he was afraid that they would harm him. *Id.* At the conclusion of

the evidence, the defendant thus tendered a self-defense instruction, stating that "[o]ne may act in self-defense on the basis of apparent necessity, or a reasonable but erroneous belief that the use of unlawful physical force is imminent." *Id.* The trial court refused this tendered instruction and instead instructed the jury that it is an affirmative defense to the crime of felony menacing that the defendant threatened force upon another person: "1. in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by [the victim]; and 2. he threatened to use a degree of force which he reasonably believed to be necessary for that purpose." *Id.* at 75, 77–78 (emphasis omitted).

On appeal to the supreme court, the defendant argued that the instruction given by the trial court did not sufficiently encompass the principle of apparent necessity. The supreme court disagreed, however, and found no reversible error. *Id.* at 78. Although the case involved a multiple assailant situation, no party appears to have raised, and the supreme court did not address, whether the instructions that were given sufficiently covered the multiple assailant situation, as opposed to the principle of apparent necessity. Moreover, the *Beckett* court cited *Jones* with approval throughout its opinion and specifically cited with approval the instruction in *Jones* that referred to both the victim and the victim's associates. *See id.*

In light of the foregoing, we do not read *Beckett* as altering the holding in *Jones* requiring the trial court to instruct the jury to consider the totality of circumstances, including the number of persons reasonably appearing to be threatening the accused. Rather, the *Beckett* court simply did not address the issue. Accordingly, we conclude that the division in *People v. Manzanares,* 942 P.2d 1235, 1240 (Colo.App.1996), correctly stated that the pattern jury instruction on self-defense, which provided, as here, that the defendant could employ self-defense to defend himself from the use of physical force or imminent physical force "by the victim," standing alone, was insufficient.

Thus, we conclude that the trial court erred in refusing defendant's tendered instruction regarding multiple assailants.

■■■■ Because we hold that defendant was entitled to an instruction on multiple assailants, we must consider whether the trial court's failure to instruct the jury on multiple assailants is reversible error. When the trial court errs in failing to give a jury instruction that the defendant requested and to which he was entitled, we review that error under a harmless error standard. *Mata–Medina v. People*, 71 P.3d 973, 980 (Colo.2003); *People v. Garcia*, 28 P.3d 340, 344 (Colo.2001). Under a harmless error standard, reversal is required if the error affected the substantial rights of the defendant. *Garcia*, 28 P.3d at 344. When, as here, the error is not of constitutional dimension, the error will be disregarded if there is not a reasonable probability that it contributed to the defendant's conviction. *Id.*

Here, in addition to the other instructions concerning self-defense, the court instructed the jury to consider all the evidence in the case in deciding whether defendant acted in self-defense:

The evidence in this case has raised an affirmative defense.

The prosecution has the burden of proving the guilt of this defendant to your satisfaction beyond a reasonable doubt as to the affirmative defense, as well as to all the elements of the crime charged.

After considering the evidence concerning the affirmative defense, *with all the other evidence in this case,* if you are not convinced beyond a reasonable doubt of the defendant's guilt, then you must find the defendant not guilty.

*See* CJI–Crim. 7:01 (1983) (emphasis added).

This instruction, in combination with the other instructions concerning self-defense, directed the jury to consider the totality of the circumstances, including multiple assailants. *See Trujillo*, 83 P.3d at 645 (reviewing court considers jury instructions as a whole). Indeed, the apparent necessity instruction set forth above appropriately directed the jurors to focus, not solely on the actions of the victim, but on whether defendant had reason-

able grounds for believing he was facing imminent danger of death or injury. The apparent necessity instruction did not specifically limit the jury to considering only the danger posed by the victim.

Moreover, defense counsel was able to argue defendant's multiple assailants theory under the instructions given by the court. Defense counsel, in closing argument, argued:

And the other thing is he can act on appearances. He didn't see a gun. He told you that he never saw the gun. He didn't see [G.V.] with a gun. He didn't see [N.P.] with a gun. But to him it appeared like there was going to be a gun, that [N.P.] was going to get a gun, or who knew, maybe [G.V.] was even armed. . . .

A person can act on appearances even if later they turn out to be false. Maybe there wasn't a gun in the car, but that doesn't take away his right to act in self-defense.

. . . .

So how do we know it was self-defense? Because when he said, "Get the heat, [N.P.]," that's when he believed he was going to die. The timing of the use of force supports a finding of self-defense.

. . . .

[Defendant] [j]ust used the amount of force that was reasonable to get away from him, to stop the attack, or to stop the concern that he was about to be shot and to prevent that from occurring.

. . . .

On January 7th of 2006, on East Colfax Avenue, in front of the EZ–Market [defendant] thought he was going to die. He heard, "Get the heat, [N.P.]." He thought he was going to be shot, and he thought he was going to die, and so he defended himself. . . . He defended himself because these are crimes he did not commit. "Get the heat [N.P.]." He thought he was going to die.

*See People v. Dore*, 997 P.2d 1214, 1222 (Colo.App.1999) (reviewing court considers the instructions as a whole and closing argument in determining whether jury was adequately advised).

Unlike in *Jones,* neither the prosecutor nor the court suggested to the jury that it could not properly take into account defendant's evidence that he had to defend himself against multiple assailants and was entitled to use a degree of force he reasonably believed necessary for that purpose.

We therefore conclude that the trial court's failure to instruct on multiple assailants was harmless error and therefore does not require reversal because there is no reasonable probability that the error led to defendant's convictions.

### B.   Initial Aggressor and "Mild Situation"

■   Defendant next contends that the trial court erred by refusing the following tendered instruction on the definition of "initial aggressor," which defendant based on the language in *Vigil v. People,* 143 Colo. 328, 334, 353 P.2d 82, 85 (1960):

> Although one invoking the right of self-defense cannot be the initial aggressor, the mere fact that one has interjected himself into a crowd or into a mild situation, does not deprive him of the right of self-defense if the situation, beginning with only an argument, develops to a point where he is being subjected to or threatened with, such physical violence that he might have to resort to physical force to protect himself.

We disagree.

The language on which defendant relies from *Vigil* is dictum and not controlling precedent. *See Main Elec., Ltd. v. Printz Servs. Corp.,* 980 P.2d 522, 526 (Colo.1999); *see also People v. Wadley,* 890 P.2d 151, 155 (Colo. App.1994) (it is generally unwise to use an excerpt from an opinion as an instruction). Moreover, in *Beckett,* the supreme court stated that because *Vigil* was decided under a former version of the self-defense statute, the court "view[s] *Vigil* as standing only for the general proposition that jury instructions generally should be 'couch[ed] ... in the language of the statute.'" *Beckett,* 800 P.2d at 77 n. 6.

Here, the trial court's instructions on self-defense accurately track the applicable statutory wording and pattern jury instructions regarding self-defense. *See* § 18–1–704; CJI–Crim. 7:16 to 7:18 (1983). Instructions which accurately track the language of the statute and pattern instructions are generally sufficient. *People v. Weinreich,* 119 P.3d 1073, 1076 (Colo.2005) (statute).

Furthermore, the tendered instruction's content was essentially embodied in the more general terms of the instructions given. The trial court specifically noted that defense counsel could argue the "mild situation" theory to the jury. With those instructions, defense counsel had the opportunity to make the more specific argument to the jury that defendant had merely injected himself into a "mild situation" and that his instinctive reaction to G.V.'s and N.P.'s aggression was reasonable.

The trial court therefore did not err in rejecting defendant's tendered "mild situation" instruction.

### C.   Trial Court's Self–Defense Instructions During Defense Counsel's Closing Argument

Defendant next argues that the trial court incorrectly instructed the jury sua sponte on the law of self-defense during defense counsel's closing argument. We are not persuaded.

During closing argument, defense counsel argued,

> Well, if you find [defendant] was acting in self-defense, he wasn't acting recklessly or with criminal negligence. He was acting reasonably under the circumstances that he was faced with. So if you find he was acting in self-defense, you are done. He is not guilty of the crime—charges against him.

The trial court interrupted defense counsel and stated, "Self-defense is an affirmative defense to some of the charges, but not all of the charges. The charges involving reckless culpable mental state, and criminal negligence, self-defense is not an affirmative defense." Defense counsel responded,

> And that's in Instruction Number 20. I hope I made that clear that on those particular charges, the Prosecution does not have to prove beyond a reasonable doubt that it was not self-defense. However, if

you find [defendant] was acting in self-defense, that means you found that he wasn't acting recklessly or with criminal negligence.

Again, the trial court interrupted defense counsel: "That doesn't necessarily follow.... They can consider that evidence [of self-defense] as it relates to the question of whether or not [defendant] was acting recklessly or with criminal negligence, but one does not, per se, amount to a finding of no recklessness or no criminal negligence."

After defense counsel concluded her closing argument, the trial court instructed the jury:

Before we proceed, I want to clarify, maybe correct a comment that I made during [defense counsel's] final statements. As it relates to the issue of self-defense, self-defense is an affirmative defense as it relates to some of the charges; namely, the Second–Degree Murder—Attempted Second–Degree Murder, First–Degree Assault, Second–Degree Assault, Causing Bodily Injury, Menacing, Attempted Second–Degree Assault, and the Attempted Third–Degree Assault. Those latter two as it relates to [N.P.].

. . . .

As [self-defense] relates to the other charges, the ones dealing with the culpable mental state of reckless and negligence, that included Attempted Manslaughter, Done Recklessly, Attempted Second–Degree Assault, Done Recklessly, and Third–Degree Assault, Done Negligently. It is not an affirmative defense, and so the People don't have that responsibility to prove beyond a reasonable doubt that the self-defense did not occur or is not applicable.

At the same time, however, the People still have the affirmative duty to prove, beyond a reasonable doubt, the culpable mental state. The culpable mental state of recklessly, as it relates to the Attempted Manslaughter and Attempted Second–Degree Assault, and the culpable mental state of Third–Degree Assault—the negligence as it relates to the Third–Degree Assault.

You can use the evidence regarding the self-defense to determine whether or not the Defendant acted in a reckless and/or negligent fashion as it relates to those charges. And if, in fact, you find that the Defendant acted reasonably, or had the reasonable belief that he was subjected to the imminent use of unlawful physical force, and that his response thereto, and the degree of his response, was reasonable, then the Defendant was neither reckless nor negligent. [sic]

█ As noted, a defendant charged with a crime involving the mental state of recklessness or criminal negligence may also present evidence of self-defense, not because it is an affirmative defense to such crimes, but because "[s]uch evidence may be considered by the jury in its determination of whether the defendant was acting recklessly or in a criminally negligent manner." *Fink*, 194 Colo. at 519, 574 P.2d at 83. Instruction No. 20 mirrors this language.

Even if the trial court's initial statements were misleading or confusing, defendant appears to concede in his opening brief that the trial court's last instruction was proper. Furthermore, defendant does not challenge Instruction No. 20, which correctly sets forth the law of self-defense as it relates to crimes with a mental state of recklessness. Therefore, the jury instructions, viewed as a whole, adequately resolve any confusion. Accordingly, any error in the initial instructions given by the trial court during defense counsel's closing argument was cured by the trial court's final oral instruction and Instruction No. 20. *See People v. Grenier*, 200 P.3d 1062, 1079 (Colo.App.2008).

We also reject defendant's argument that, because of the trial court's interruptions, defense counsel "finished closing argument without explaining how self-defense related to the charges with a mens rea of recklessly or negligently." There is no indication in the record that the trial court abridged or curtailed defense counsel's closing argument in any manner. Defense counsel was free to argue defendant's theory of how self-defense related to crimes with a mental state of recklessness. Indeed, after the trial court's interruptions, defense counsel articulated to the jury that if it found defendant reasonably acted in self-defense, it must acquit him of all

the charges: "If you believe that [defendant] was acting in self-defense, then he was justified in his actions, and he didn't commit any crimes." We therefore conclude there was no reversible error.

## II. Cumulative Error

Because we found not only the absence of reversible error with respect to the trial court's failure to give defendant's tendered multiple assailants instruction, but also the absence of any error whatsoever with respect to the initial aggressor instruction and the trial court's self-defense instructions given during defense counsel's closing argument, there can be no cumulative error. *See People v. Marin,* 686 P.2d 1351, 1357 (Colo.App. 1983).

The judgment is affirmed.

Judge GABRIEL and Judge CONNELLY concur.