The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Kenneth **FERGUSON**, Defendant–Appellant.

No. 99CA1266.

Colorado Court of Appeals, Div. IV.

Nov. 8, 2001.

Rehearing Denied Feb. 21, 2002.

Ken Salazar, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Kenneth Ferguson, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree assault committed under a sudden heat of passion. Defendant also appeals the sentence imposed. We reverse the judgment, vacate the sentence, and remand for a new trial.

Defendant and the victim argued, exchanged racial epithets, and prepared to fight. According to the prosecution's evidence, when the victim put up his fists to fight, defendant pulled out a knife and cut the victim's neck. Defendant maintained that he had acted in self-defense.

Defendant was acquitted of the charged offense of attempted second degree murder and the lesser included offenses of attempted manslaughter and second degree assault. However, he was convicted of first degree assault under a sudden heat of passion and crime of violence.

## I.

Defendant first contends the trial court erred in denying his motion for judgment of acquittal. According to defendant, there was insufficient evidence to support the jury's verdict because the prosecution failed to prove the victim suffered serious bodily injury. We disagree.

When assessing the sufficiency of the evidence in support of a guilty verdict, "a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt." *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999).

As relevant here, "[a] person commits the crime of assault in the first degree if ... [w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." Section 18–3–202(1)(a), C.R.S.2001.

Serious bodily injury is defined as:

bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

Section 18–1–901(3)(p), C.R.S.2001.

■ The victim testified that the cut to his throat was so deep that when he put his hand to the wound, his fingers "literally went in my neck." The physician who treated the victim in the emergency room testified that the laceration was six inches long and up to a third of an inch deep; that it "was roughly from the Adam's apple area anteriorly and extended back to about the line the ear canal"; and that the victim's external carotid vein was "completely severed."

This evidence and the inferences arising therefrom, when viewed in the light most favorable to the prosecution, were sufficient to prove beyond a reasonable doubt that the wound defendant inflicted on the victim posed a substantial risk of death or of protracted loss or impairment of the function of a part of the victim's body.

## II.

■ However, we agree with defendant that a new trial is required because the self-defense instruction given by the trial court erroneously referred to the use of "deadly physical force" and because the error was not harmless.

Over defendant's objection, the trial court instructed the jury on self defense, as relevant here, as follows:

It is an affirmative defense to the offense of attempted second degree murder, first and second degree assault that [defendant] used physical force upon another person[:]

1. in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by the victim, and

2. he used a degree of force which he reasonably believed to be necessary for that purpose.

Deadly physical force may be used only if the defendant reasonably believes a lesser degree of force is inadequate and;

The defendant has reasonable grounds to believe, and does believe, that he or another person is in imminent danger of being killed or receiving great bodily injury.

The trial court defined deadly physical force for the jury, again over defendant's objection, as "force, the intended, natural, and probable consequence of which is to produce death."

On appeal, the People concede—and we agree—it was error to instruct the jury concerning the use of deadly physical force in this case because the victim did not die. *See* § 18–1–901(3)(d), C.R.S.2001 ("'Deadly physical force' means force, the intended, natural, and probable consequence of which is to produce death, *and which does, in fact, produce death.*" (emphasis added)); CJI Crim. 5:01(9) (1983)(same); CJI Crim. 7:17 (1983)(Notes on Use)(self-defense instruction concerning deadly physical force "should only be used if the victim dies").

Nevertheless, the People maintain that inclusion of the wrongly worded "deadly physical force" instructions in this case was harmless, given defendant's acquittal of other charges. However, contrary to the People's contention, the offenses of which defendant was acquitted do not compel the conclusion that the erroneous instructions constituted harmless error.

## A.

■ Instructional errors that do not affect a defendant's substantial rights or prejudice his or her defense are harmless. *People v. Rodriguez,* 914 P.2d 230 (Colo.1996); *see* Crim. P. 52.

Here, the jury acquitted defendant of attempted second degree murder, as well as the lesser included offenses of attempted manslaughter and second degree assault.

The trial court instructed the jury that the elements of attempted second degree murder, as relevant here, are:

1. That the defendant . . .
2. knowingly,
3. engaged in conduct constituting a substantial step toward the commission of second degree murder,
4. attempting to cause the death of another person.

The trial court instructed the jury that the elements of attempted manslaughter, as relevant here, are:

1. That the defendant . . .
2. recklessly,
3. attempted to cause the death of another person.

■ The elements of first degree assault, as relevant here, required that the People prove beyond a reasonable doubt that defendant intended to cause the victim serious bodily injury by means of a deadly weapon.

The trial court also instructed the jury that defendant's affirmative defense of self-defense applied to attempted second degree murder and first degree assault, but did *not* apply to attempted manslaughter.

In acquitting defendant of attempted second degree murder, the jury must have found that the prosecution failed to prove at least one element of that crime beyond a reasonable doubt, or alternatively, that the prosecution satisfied all of the above elements but defendant acted in self-defense. If the jury found an element was missing, for example, if it concluded defendant was not trying to kill the victim, the jury need not have even considered the self-defense issue. Thus, we simply cannot determine the manner in which the jury applied the self-defense instruction, if at all, and the effect of the trial court's erroneous instruction on deadly physical force.

Similarly, defendant's acquittal of attempted manslaughter allows us to assume the jury found the prosecution failed to prove at least one element of that crime beyond a reasonable doubt. However, because self-defense was not a defense to attempted manslaughter, defendant's acquittal on that charge offers no guidance regarding the effect of the erroneous self-defense instructions, and the People do not argue otherwise.

## B.

■ Further, and also contrary to the People's contention, the instructional error was not harmless as to the first degree assault charge because the jury was permitted to hold defendant to a higher standard in establishing self-defense than is required by law.

To have convicted the defendant of first degree assault, the jury must have found the People had established each element of that offense beyond a reasonable doubt, and the People also failed to disprove defendant's affirmative defense of self-defense.

There are two prongs of the self-defense instruction, and they are mutually exclusive. The first prong addresses the appropriate use of physical force in self-defense when death of the other person has not occurred. In contrast, the second prong of the self-defense instruction addresses the use of deadly force in self-defense. If the force used by the defendant does not cause death, by definition it cannot be deadly physical force. Similarly, if the force used was not intended to produce death, it cannot be deadly physical force and only the first prong of the self-defense instruction applies.

When the defendant uses force resulting in the victim's death and the intended, natural, and probable consequence of using such force is to produce death, only the second prong of the self-defense instruction referring to deadly physical force applies. In that event, the instruction referring to ordinary physical force should not be given. Section 18–1–

901(3)(d), C.R.S.2001; CJI Crim. 5:01(9) (1983); CJI Crim. 7:17 (1983).

This distinction between ordinary physical force and deadly physical force is significant because the standards for establishing self-defense are different. The first prong, which applies if the victim has not died, creates a lower standard for establishing self-defense than the standard required under the second prong.

The first prong provides that a defendant may use physical force on another person in self-defense if: (1) the defendant used force to defend himself or herself from what the defendant reasonably believed to be the use or imminent use of unlawful physical force by the victim; and (2) the defendant used a degree of force that he or she reasonably believed to be necessary for that purpose.

It is only where the victim has died that the second prong of the self-defense instruction applies and permits the use of deadly physical force in self-defense, and only if the defendant has satisfied more stringent conditions. The second prong provides that the defendant may use deadly physical force only if it is established that he or she: (1) reasonably believed a lesser degree of force was inadequate; and (2) had reasonable grounds to believe and did believe he or she was in imminent danger of being killed or receiving great bodily injury.

In defining deadly physical force as "force, the intended, natural, and probable consequence of which is to produce death," the trial court erred in two respects. First, the correct instruction defines deadly physical force as: "force, the intended, natural, and probable consequence of which is to produce death and *which does, in fact, produce death*" (emphasis added).

Second, because defendant's actions did not produce death, the trial court should have instructed the jury in accordance with the first prong of the self-defense instruction. No reference should have been made to deadly force. The court thus erred in referring the jury to the language contained in the second prong, which included the concept of deadly physical force and allowed the jury to hold defendant to a more stringent standard in establishing self-defense than was required of him.

### C.

Our conclusion that the error was not harmless here is buttressed by the prominent discussion by both counsel of the deadly physical force issue in their closing arguments to the jury. In the prosecutor's initial argument, he stated that:

> *Deadly physical force* means force the intended, natural, and probable consequence of which is to produce death. Now, I submit to you that's exactly what [defendant] did on [the date of the offense]. He used *deadly physical force*. He cut [the victim's] neck open. He used force which was the intended, the natural, and the probable consequence of which would be to drop [the victim], to kill him.

> Now you can only use *deadly physical force* in self-defense ... if you reasonably believe a lesser degree is inadequate. It is kind of like last resort.... You're allowed to use it, make no doubt about it. You can use *deadly physical force* in this state, but it's a last resort. No other options....

> Now, you can allow the defendant to use *deadly physical force* in this case, if you're going to believe in self-defense and believe he had the right to use *deadly physical force,* you also must believe he was in imminent—the word the law uses is imminent danger of being killed or receiving great bodily injury. Within a split second he's going to die or receive great bodily injury in order for him to be authorized to use *deadly physical force.* (emphasis added)

Defense counsel responded by stating, as relevant here, that:

> I want to talk about that middle paragraph about *deadly physical force* where it says *deadly physical force* may be used only if the defendant reasonably believes a lesser degree of force is inadequate and the defendant has reasonable grounds to believe and does believe that he or another person is in imminent danger of being killed or receiving great bodily injury.... [Defen-

dant] did not know what [the victim] had in his hands .... (emphasis added)

Given this focus on deadly physical force by counsel, along with the other relevant circumstances discussed above, there was a reasonable probability the error contributed to defendant's conviction. *See People v. Ross,* 745 P.2d 277 (Colo.App.1987). We therefore conclude that the trial court's erroneous submission of the deadly physical force instructions was not harmless, and that defendant is entitled to a new trial.

In view of this conclusion, we need not address defendant's other contention, raised for the first time on appeal, concerning the deadly physical force instructions.

## III.

Because it is likely to arise on remand, we also address defendant's contention that the trial court violated his constitutional right of confrontation by not allowing him to impeach the victim's testimony with evidence of specific prior acts of violence. We disagree.

CRE 404(a) addresses the admissibility of character evidence, while CRE 405 delineates the manner in which character may be proven. *See People v. Jones,* 675 P.2d 9 (Colo. 1984).

Specifically, CRE 404(a)(2) addresses the admission of a pertinent character trait of a victim and provides, as relevant here, that evidence of a person's character is not admissible to prove he or she acted in conformity therewith on a particular occasion, except "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same."

■ Defendant maintains that the evidence of the victim's specific, prior violent acts was admissible because it was relevant to his theory that he acted in self-defense. However, if a defendant asserting a claim of self-defense did not, at the time of the offense, have actual knowledge of prior acts of violence committed by the victim, evidence of such acts is inadmissible under CRE 404(a)(2) to prove the victim was the initial aggressor. *People v. Jones, supra.*

■ Under such circumstances, the defendant's proof of the victim's character or character trait for violence is confined to reputation or opinion testimony. Further, while CRE 405(a) by its terms states that is applies in "all cases" in which proof of character is permissible, the scope of the rule is not as broad as this language may suggest. CRE 405(a) is not applicable when character is offered to impeach a witness. CRE 608 governs that use of character. As Professors Wright and Graham have explained:

The Advisory Committee's Note [to the federal rule] originally contained a cross-reference to Rule 608. This was eliminated when the explicit reference to Rule 608 was added to Rule 404(a)(3), apparently in the belief that Rule 405 was only applicable to proof of character admissible under Rule 404(a)(1) and (2). *Thus, despite the literal language of Rule 405, it is not applicable to impeachment by character.*

22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5263 n. 3 (1978) (emphasis added).

Colorado's rules governing the admissibility of character evidence are substantially similar to the federal rules. Thus, CRE 608 governs the resolution of this issue. CRE 608(b) provides:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

■ Here, during cross-examination, the following exchange occurred:

DEFENSE COUNSEL: You're a person that likes to get into fights, aren't you?

VICTIM: No, sir, I'm not.

DEFENSE COUNSEL: [N]ot only are you a person that ... likes to get into

fights, but you also like to get into fights with black people, don't you?

VICTIM: No, sir.

Defendant sought to impeach this testimony with evidence showing the victim had committed two prior violent assaults and describing those assaults. The trial court properly disallowed the specific evidence of those assaults because defendant conceded he had not known about them at the time of the offense. *See People v. Jones, supra.* However, the court did allow defendant to call as witnesses the two persons who were the subjects of these violent assaults.

Both witnesses described their relationships with the victim and testified that he was "violent" and "very aggressive." Defendant, who is an African–American, also elicited testimony from one of the witnesses—the victim's former girlfriend—that the victim "had a particular problem with [African–American] people." In addition, when the victim himself testified, he denied being a racist, but he admitted that he called defendant "a nigger" and that on the night of this incident, he was ready to fight with defendant and did not intend to back down.

Under these circumstances and given the evidence defendant was allowed to introduce, we conclude the trial court adequately protected his rights of confrontation by allowing him to impeach the victim's testimony with reputation evidence that exposed the victim's prejudice and showed his predisposition for violence. *See People v. Rubanowitz,* 688 P.2d 231 (Colo.1984)(a defendant's right to confrontation of witnesses is not absolute and is tempered by the trial court's discretion to limit cross-examination that would elicit inadmissible evidence; because the extent to which cross-examination may appropriately be limited without violating a defendant's constitutional right of confrontation necessarily depends on the circumstances of particular criminal proceedings, such determination is committed to the discretion of the trial court).

We further conclude, again after considering the evidence defendant was permitted to introduce, that he received a full and fair opportunity to show the violent propensities of the victim. Accordingly, we perceive no abuse of discretion by the court in excluding evidence of the specific prior acts of violence by the victim.

## IV.

■ Defendant next contends the trial court erred by imposing a five-year sentence upon his conviction for first degree assault committed upon a sudden heat of passion. He maintains that first degree assault committed upon a sudden heat of passion is neither a crime of violence nor an extraordinary risk of harm offense. Although we are setting aside the judgment, this issue also may arise on remand and we therefore address and reject his contention.

Because the jury found that defendant committed first degree assault under a sudden heat of passion, the offense was reduced from a class three felony to a class five felony. *See* § 18–3–202(2)(a), C.R.S.2001. The presumptive sentencing range for a class five felony is one to three years imprisonment. Section 18–1–105(1)(a)(V)(A), C.R.S. 2001.

Defendant also was charged with and convicted of an enumerated crime of violence under § 16–11–309, C.R.S.2001, first degree assault, and the jury returned a special verdict finding he used and possessed a deadly weapon during the commission of that offense. Therefore, contrary to his contention, the maximum sentence in the presumptive sentencing range was increased by four years pursuant to the extraordinary risk crimes provision of § 18–1–105(9.7)(b), C.R.S. 2001. *See People v. Banks,* 9 P.3d 1125 (Colo.2000)(the extraordinary risk sentencing provision of § 18–1–105(9.7)(b)(XII) applies if the defendant is convicted of a crime of violence enumerated in § 16–11–309 and the jury finds that the defendant caused serious bodily injury or used a deadly weapon).

Also, contrary to defendant's contention, the sentence enhancement provision of § 16–11–309 applies, which requires a sentence of at least the midpoint of the presumptive range but not more than twice the maximum presumptive range sentence. That provision applies even when, as here, the jury finds the defendant committed the offense under a

sudden heat of passion. *People v. Farbes*, 973 P.2d 704 (Colo.App.1998)(crime of violence sentencing required where defendant convicted of first degree assault committed under a sudden heat of passion).

We further observe that, at sentencing, the court and the parties believed three years was the minimum possible sentence that could be imposed without a finding of extraordinary mitigating factors. However, the minimum possible sentence available was actually two and one-half years (the midpoint in the adjusted presumptive range after application of the extraordinary risk of harm increase to the maximum sentence in the presumptive range).

The judgment is reversed, the sentence is vacated, and the case is remanded for a new trial consistent with the views expressed in this opinion.

Judge RULAND and Judge VOGT concur.