2013 COA 28

The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Joseph Ray BRYANT, Defendant–Appellant.

No. 10CA0417

Colorado Court of Appeals, Div. IV.

Announced March 14, 2013

Jefferson County District Court, No. 09CR90, Honorable Stephen M. Munsinger, Judge

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Neff Services, Inc., Lauretta A. Martin Neff, Bayfield, Colorado, for Defendant–Appellant

Opinion by JUDGE FOX

¶ 1 Defendant, Joseph Ray Bryant, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of unlawful sexual contact by use of force. He also appeals his designation as a sexually violent predator (SVP). We affirm.

## I. Background

¶ 2 The prosecution presented evidence of the following. As seventeen-year-old A.M. and her friend were about to walk into a Starbucks, Bryant attacked A.M. Bryant wrapped one hand around A.M.'s neck and grabbed her vaginal area with his other hand. Bryant held A.M. for about eighteen seconds and tried to pull her away from the Starbucks entrance. A.M. screamed and tried to get away. When she slammed her elbow into Bryant's stomach, he released her and ran away.

¶ 3 Late that evening, Bryant approached D.P. at a bus stop. He "bumped" into D.P., stared at her, and asked her age before following her onto the bus. When D.P. got off the bus, Bryant followed her to the next bus stop. She decided to wait at a bus stop with better lighting and more stores nearby. Bryant waited with her at the second bus stop for thirty minutes. He offered several times to pay her $300 if she would accompany him to a motel room, and she declined. Bryant then grabbed D.P.'s breasts four to six times and her vagina once. D.P. asked him to stop and tried pushing his hands away. Bryant grabbed her hand, put it on his crotch. She felt he had an erection before she could pull away.

¶ 4 Bryant followed D.P. onto a second bus. Bryant again followed her off the bus, and D.P. asked him to stop following her. Bryant again grabbed her breasts, twice, and she pushed him away. Bryant then walked away but was arrested later that evening.

¶ 5 As relevant here, Bryant was charged with two counts of unlawful sexual contact by force, one for each victim, and the jury found Bryant guilty of these charges. The trial court made a preliminary finding that Bryant was a SVP and sentenced him to five years to life in the Department of Corrections on each conviction, to run consecutively. After conducting a hearing, the court made a final determination that Bryant was a SVP.

¶ 6 Bryant contends that (1) he was deprived of his right to effective assistance of counsel when the court denied his counsel's motion for a continuance, (2) the evidence was insufficient to support the jury's finding that his use of "force" caused the victims to submit to unlawful sexual contact, and (3) the SVP designation violated his rights to remain silent and to equal protection.

## II. Effective Assistance of Counsel

¶ 7 Bryant contends that he was deprived of his right to effective assistance of counsel when the trial court denied his counsel's request to continue the trial two weeks beyond the Uniform Mandatory Disposition of Detainers Act (UMDDA), § 16–14–104,

C.R.S.2012, deadline. We conclude that Bryant has waived this right.

¶ 8 On November 27, 2009, Bryant's counsel learned that Bryant's trial had been rescheduled from December 15 to December 1 before a different judge to comply with Bryant's speedy trial rights under the UMDDA. Counsel objected to the earlier trial date. Bryant insisted on a speedy trial and the judge warned Bryant against proceeding pro se and advised him of the consequences of his decision. Bryant decided to proceed pro se and counsel assumed that she had been removed from the case by the prior judge.[1]

¶ 9 On December 1, counsel appeared with Bryant and explained that she now understood Bryant did not want to proceed pro se. She requested a two-week continuance because she was not prepared for trial. The court told Bryant's counsel, "I think your position is entirely reasonable, I have no quarrel with your position, but let me [inquire further]." The court then asked Bryant, who was present when counsel explained why she requested a continuance, "Do you want, then, to continue this over until the 15th and have [your counsel] ready to go to trial?" Bryant responded:

> I know I have a right to effective assistance of counsel, [and I] have the right to under the UMDDA. And it seems like I had the choice to waive one right or the other for one right. . . . [I]f I [have] my speedy trial then I won't have effective counsel. . . . [M]y public defender was well informed I've been wanting to go to trial. . . . I wanted to get on with my life, or whatever.

¶ 10 The court expressed confidence in his counsel's abilities, and ordered counsel to represent Bryant. It again advised Bryant of his choices and their respective consequences, and explained:

> [Y]ou have two rights and they're in conflict with each other. Apparently, this was set for the 15th, [until] it was discovered that under your speedy trial rights or

speedy detainer rights, that would run out today. The 1st of December. So we've got 13 days between now and the trial date. And so it's your choice. You do have two different rights: Do you want to go to trial today with [your counsel] to do the best she can, or do you want to . . . wait 13 days and go to trial and have her better prepared? That's your choice.

Bryant responded, "I want to protect my rights under the UMDDA."

¶ 11 Bryant was present when counsel explained how, in her opinion, the earlier trial date would limit her effectiveness, and how she would be more effective if she had two more weeks to prepare. Bryant's comments reflect that he understood his rights, and knew his counsel's position. He does not assert that he was not sufficiently advised before he chose his UMDDA right at the expense of being represented by insufficiently prepared counsel. Although Bryant had counsel, to the extent that he complains his counsel was not effective, the record reflects that Bryant made a voluntary, knowing, and intelligent waiver of better prepared counsel, in favor of his right to a speedy trial under the UMDDA. See *People v. Krueger*, 2012 COA 80, ¶ 13, 296 P.3d 294 (defendant's waiver of the right to counsel is effective only when it is voluntary, knowing, and intelligent).

¶ 12 Further, Bryant's counsel did not argue at trial, and does not argue on appeal, that the client's position should have been disregarded because waiver of the UMDDA deadline was solely a matter of counsel's strategic judgment. Nor did counsel insist that Bryant waive his UMDDA rights. *Cf. People v. Bergerud*, 223 P.3d 686, 693 (Colo. 2010) (defendant forced to choose between appearing pro se and proceed with a theory of self-defense, or continue with counsel while sacrificing constitutional rights associated with his defense, such as the choice to testify or enter a plea of not guilty). Because either Bryant or his counsel could have waived Bryant's UMDDA rights, we conclude

---

1. Bryant does not assert on appeal that he had an inadequate *Arguello* advisement. *See People v. Arguello*, 772 P.2d 87, 93 (Colo.1989) (suggesting a specific colloquy to be conducted between the trial court and a defendant to ensure a voluntary, knowing, and intelligent waiver of the right to counsel).

that Bryant could insist on the earlier trial date. *See People v. Newton,* 764 P.2d 1182, 1187–88 (Colo.1988) (recognizing, under the Interstate Agreement on Detainers Act (IAD), that the defendant or his attorney may waive speedy trial); *Sweaney v. District Court,* 713 P.2d 914, 918 (Colo.1986) (noting that the policies underlying the UMDDA and the IAD are similar).

¶ 13 Bryant does not argue on appeal that the trial court should have overridden his decision to invoke his UMDDA rights by allowing the continuance counsel requested. *See People v. Jefferson,* 981 P.2d 613, 615 (Colo.App.1998) (upholding trial court's decision to grant a continuance because defense counsel was unprepared for trial and denying the defendant's attempt to revoke his speedy trial waiver). Consequently, the trial court did not err in giving effect to Bryant's choice.[2]

### III. Use of Force Evidence

¶ 14 We also disagree with Bryant's contention that there was insufficient evidence to show that he caused each victim's submission by force because there was no evidence that he used force apart from the unlawful contact, and the victims were able to escape.

### A. Standard of Review

¶ 15 We review the record de novo to determine whether the evidence before the jury was sufficient in quality and quantity to sustain the conviction. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005). In so doing, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Clark v. People,* 232 P.3d 1287, 1291 (Colo.2010) (quoting *People v. Bennett,* 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

### B. Analysis

¶ 16 "Any actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if ... [t]he actor knows that the victim does not consent." § 18–3–404(1)(a), C.R.S.2012. The offense is elevated from a class one misdemeanor to a class four felony "if the actor compels the victim to submit by use of such force ... as specified in section 18–3–402(4)(a)." § 18–3–404(2)(b), C.R.S.2012. Section 18–3–402(4)(a), C.R.S. 2012, specifies that "[t]he actor causes submission of the victim through the actual application of physical force or physical violence."

¶ 17 Although neither section 18–3–402 nor section 18–3–404 defines "physical force," divisions of this court have adopted the definition of "physical force" as "force applied to the body." *People v. Keene,* 226 P.3d 1140, 1143 (Colo.App.2009); *People v. Holwuttle,* 155 P.3d 447, 449–50 (Colo.App.2006). This definition of "physical force" does not require an "extra application" of force other than force applied to the body. *Keene,* 226 P.3d at 1143.

¶ 18 Bryant relies on *Keene,* where a division of this court held that evidence that a defendant's body weight caused a victim to submit against her will was insufficient to establish probable cause to believe that the defendant applied physical force or physical violence. *Id.* There, the prosecution's witness indicated only that a victim, D.M., woke up to the defendant lying on top of her and having sex with her, and that D.M. was able to get up and escape the assault. *Id.* at 1144. The division concluded that the evidence was insufficient to show that when the defendant was lying on top of D.M., he caused submission through the application of physical force. *Id.* In contrast, with regard to a different victim, J.W., the division concluded that the evidence was sufficient where J.W. woke up to the defendant having sex with her, told

**2.** Alternatively, even assuming the trial court erred in denying the continuance, we agree with the prosecution that Bryant waived any such error. *See People v. Rodriguez,* 209 P.3d 1151, 1160 (Colo.App.2008) (distinguishing between "forfeited" and "waived" error; noting that

waiver occurs when a defendant specifically removes claims from the trial court's consideration by intentionally "relinquishing or abandoning a known right"; and noting that a "waived" claim of error presents nothing for an appellate court to review).

him to stop, and tried to push off of him but was unable to do so. *Id.* at 1143.

¶ 19 Bryant contends that the facts in his case are similar to the situation involving D.M. in the *Keene* case because his victims were able to escape. We disagree.

¶ 20 In *Keene*, the evidence did not show that the defendant initially used force to cause submission against either victim, because the victims were initially asleep. *Id.* at 1143–44. With regard to D.M., the prosecution only presented evidence that D.M. was able to get up and escape the assault when she woke up, and did not present evidence that the defendant used force to try to prevent her from escaping. *Id.* at 1144. Therefore, there was no evidence that the defendant used force to cause her submission. By contrast, evidence showed that J.W. struggled with the defendant, but he was able to use his body weight to keep her on the bed, thereby using physical force to cause her submission. *Id.* at 1143.

¶ 21 Here, even though the victims were eventually able to escape, the evidence showed that Bryant used physical force to effectuate submission to his illegal sexual contacts.

■ ¶ 22 Bryant's sexual contact against A.M. was his holding her by the neck and grabbing her vagina. A.M.'s testimony supported a finding that Bryant used force in making sexual contact in spite of A.M.'s resistance:

- "[H]e just grabbed me as hard as he could in the vagina, and wouldn't let go ... for about 18 seconds ... [while] I was screaming and yelling and trying to get away."
- "[It felt] like [Bryant] was trying to penetrate into—like trying to get into my pants as hard as he could.... I've never had such a hard grip on me before."
- "[I was] hurting [and] completely numb and throbbing in my vaginal area [after the assault]."
- "I was struggling, and he just has a really, really tight hold on me, and had his hand down on my vagina. Then he had his other hand wrapped completely

around me, and so ... all his weight was forcing me to come with him."

- "[In the ambulance, the paramedics] undressed me ... [a]nd I had ... three fingerprint marks down there ... [that] had already bruised through."

¶ 23 A.M.'s friend's testimony corroborated A.M.'s testimony that Bryant used force to cause A.M. to submit to his touching her vaginal area:

- Bryant "jumped and grabbed" A.M., wrapped his arm around A.M.'s neck and head while his other arm was lower down her body, and started walking away with her.
- A.M. tried to push Bryant off of her and kicked him.

The record shows that even though A.M. "finally got enough strength and hit him as hard as [she] could with [her] elbow to his stomach," Bryant was able to grab her vagina for about eighteen seconds by using physical force. *See People v. Cole*, 926 P.2d 164, 167 (Colo.App.1996) (concluding that evidence was sufficient to support a jury's verdict that the defendant accomplished three sexual assaults by application of physical force where testimony showed that the "defendant pinned the victim's head down as he sexually assaulted her, forcefully pushed her head down on his genitals, hit her in the mouth, and was very physical both in his actions generally and in his handling of the victim during the three sexual assaults").

■ ¶ 24 Bryant's sexual contact against D.P. was grabbing her breasts and vagina, and forcing her hand to his crotch. D.P.'s testimony supported a finding that he used physical force to cause her to submit to the illegal sexual contact:

- She pushed him away and asked him to stop when he grabbed her breasts and vagina.
- Bryant grabbed her hand and she tried to pull away, but he pulled her hand "hard enough to touch his crotch."

An eyewitness, who lived in a house next to D.P.'s brother's house, corroborated D.P.'s testimony:

I hear[d] my two little sisters screaming my name, so I ran upstairs and they say there is a guy outside hurting a girl. And so I look out the window, and I see the guy, you know, physically with his hands around her shoulder, and at that time she pushed him off and starts running up to my door.

Additionally, an officer testified that D.P. reported, the night the incident occurred, that Bryant "grabbed a tight grip, [and] she had to pull away to get her hands away." The record contains ample evidence that D.P. physically resisted Bryant's sexual contact, and he used physical force to cause her to submit to the sexual contact.

¶ 25 Bryant also contends that the prosecutor mischaracterized the law during closing argument when he argued that the evidence supported a finding that Bryant used force to cause the victims' submission. Because we conclude that the evidence was sufficient to support a finding of force, we reject Bryant's prosecutorial misconduct argument.

## IV. Constitutionality of SVP designation

¶ 26 Bryant contends that his SVP designation is unconstitutional because it violates his rights to remain silent and to equal protection of the laws. We discern no constitutional violation.

### A. Standard of Review

¶ 27 Statutes are presumed to be constitutional. *People v. Hickman*, 988 P.2d 628, 636 (Colo.1999). "The party challenging [a statute's] validity has the burden of proving unconstitutionality beyond a reasonable doubt." *Id.* at 634 (quoting *People v. Janousek*, 871 P.2d 1189, 1195 (Colo.1994)). We review de novo the trial court's ruling on the constitutionality of a statute. *People v. Mojica–Simental*, 73 P.3d 15, 18 (Colo.2003).

### B. Right to Remain Silent

¶ 28 Bryant contends that the SVP evaluation procedures violate the right to remain silent because offenders who do not participate in the SVP assessment interview, as he chose not to, are evaluated using an alternative scale that increases the likelihood they will be designated SVPs. We are not persuaded.

¶ 29 Bryant's argument assumes that the Fifth Amendment applies to the SVP evaluation procedures. Fifth Amendment privileges apply during sentencing. *People v. Young*, 987 P.2d 889, 894 (Colo. App.1999). However, an SVP designation is not part of a defendant's sentence because its purpose is not to punish the defendant, but to protect the public and to aid law enforcement. *People v. Brosh*, 2012 COA 216, ¶ 14, 297 P.3d 1024; *People v. Carbajal*, 2012 COA 107, ¶ 37, 312 P.3d 1183

¶ 30 The United States Supreme Court has held that psychiatric examinations used to evaluate sexually dangerous persons for involuntary commitment under the Illinois Dangerous Persons Act were not "criminal" proceedings within the meaning of the Fifth Amendment's guarantee against compulsory self-incrimination. *Allen v. Illinois*, 478 U.S. 364, 374, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986). This is so because the Illinois Dangerous Persons Act is intended to treat, rather than punish, those it commits. *Id.* We apply the same reasoning here. The SVP statute is designed "not to punish the defendant, but to protect the community and to aid law enforcement officials in investigating future sex crimes." *Carbajal*, 2012 COA at ¶ 37; *see Brosh*, at ¶ 9; *Fendley v. People*, 107 P.3d 1122, 1125 (Colo.App.2004); *People v. Stead*, 66 P.3d 117, 120 (Colo.App.2002).

¶ 31 Because the right to remain silent does not apply to the SVP evaluation procedures, we reject Bryant's contention.

### C. Equal Protection

¶ 32 We also reject Bryant's contention that the SVP evaluation procedures violate equal protection because offenders who choose not to participate in the assessment interview are more likely to be designated SVPs than offenders who participate in the interview. Unlike the Fifth Amendment, equal protection is not limited to criminal proceedings. *Williams v. Shaffer*, 385 U.S. 1037, 1039, 87 S.Ct. 772, 17 L.Ed.2d 683 (1967).

¶ 33 Equal protection of the laws guarantees that similarly situated persons receive similar treatment. *People v. Czemerynski*, 786 P.2d 1100, 1111 (Colo.1990). "The threshold question in any equal protection challenge is whether the persons allegedly subject to disparate treatment are in fact similarly situated." *People v. Black*, 915 P.2d 1257, 1260 (Colo.1996). Bryant's contention does not meet the threshold test because offenders who participate in the interview are not similarly situated to offenders who do not participate in the interview. According to the SVP screening manual, before deciding whether to participate, offenders are informed that a different scale applies to those who do not choose participate in the interview and that participation decreases the likelihood that they will be designated SVPs. *See, e.g., People v. Mendoza*, 313 P.3d 637, 642 (Colo.App.2011) (concluding that the SVP statute did not treat similarly situated persons differently in violation of equal protection where research established that an offender designated an SVP was slightly less likely to be rearrested for an SVP offense than one not designated as an SVP).

¶ 34 Accordingly, Bryant's equal protection claim fails because the offenders who do not participate in the assessment interview are not similarly situated to those who do participate.

¶ 35 Judgment affirmed.

JUDGE WEBB and JUDGE MÁRQUEZ * concur.