The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 7, 2019

## 2019COA16

**No. 14CA1958, *People v. Ramirez* — Criminal Law — Jury Instructions — Instructional Errors; Criminal Procedure — Plain Error**

On remand from the supreme court, a division of the court of appeals reconsiders a prior division's opinion in this case in light of the decision in *People v. Rediger*, 2018 CO 32. The division concludes that defense counsel's error in declining to object to an inapplicable jury instruction amounted to a forfeiture, and not a waiver, as described in the prior division's opinion. Forfeiture is the failure to make the timely assertion of a right, whereas waiver is the intentional relinquishment of a known right or privilege. When, as in this case, there is no indication that defense counsel recognized the instructional error, and there is no rational, strategic reason for the defense to want such an erroneous instruction to be given,

counsel's failure to perceive and address the error is attributable to neglect.  In that instance, the instructional error has not been waived, but merely forfeited.

Because the trial court's failure to properly instruct the jury on "deadly physical force" amounted to prejudicial plain error, the division reverses the conviction of first degree assault and remands for a new trial solely as to that charge.  In all other respects, the judgment is affirmed.

The dissent would affirm the judgment in its entirety because the lawyer made a knowing and intentional waiver of any error in the court's self-defense instruction.

Court of Appeals No. 14CA1958
Weld County District Court Nos. 13CR875, 13CR890, 13CR1222 & 13CR1681
Honorable Timothy G. Kerns, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joe Anthony Ramirez,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TERRY
Martinez*, J., concurs
Webb, J., dissents

Announced February 7, 2019

Philip J. Weiser, Attorney General, Majid Yazdi, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dayna Vise, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    This case has been remanded from the supreme court. *People v. Ramirez*, (Colo. No. 18SC281, Dec. 3, 2018) (unpublished order). That court has instructed us to reconsider the prior division's opinion in this case, *People v. Ramirez* (Colo. App. No. 14CA1958, Mar. 8, 2018) (not published pursuant to C.A.R. 35(e)) (*Ramirez I*), in light of the decision in *People v. Rediger*, 2018 CO 32.

¶ 2    Defendant, Joe Anthony Ramirez, was convicted in one trial of charges stemming from four consolidated criminal cases. He was found guilty of attempted first degree murder, attempted reckless manslaughter, first degree assault with a deadly weapon, engaging in a riot, illegal discharge of a firearm, theft by receiving, vehicular eluding, and possession with intent to distribute a schedule II controlled substance. The court imposed a combination of consecutive and concurrent sentences totaling eighty-eight years.

¶ 3    In *Ramirez I*, the division affirmed his conviction of all charges. After receiving the supreme court's order of remand, we requested supplemental briefing from the parties as to the application of *Rediger*. That supreme court decision has potential effect only on our disposition of the conviction for first degree assault. Thus,

none of the other convictions entered against Ramirez are affected by the supreme court's remand.

¶ 4    With respect to the first degree assault conviction, we now conclude that defense counsel's error in declining to object to an inapplicable jury instruction amounted to a forfeiture, as described in *Rediger*, ¶¶ 39-47, and not a waiver, as described in the prior division's opinion.  Because we conclude that the error amounted to prejudicial plain error, we reverse the conviction of first degree assault and remand for a new trial solely as to that charge.

## I. The Erroneous Instruction

¶ 5    Ramirez argues that the trial court improperly instructed the jury as to "deadly physical force" in Instruction Number 29, which related to the charges of first degree assault, second degree assault, and third degree assault.  (The jury found him guilty only of first degree assault.)

¶ 6    The prior division concluded that Ramirez had waived his contention of instructional error and therefore declined to consider it.  In accordance with the supreme court's remand, we now re-examine that ruling.

¶ 7     During the jury instruction conference, defense counsel said

that a scintilla of evidence was presented at trial that would support

the defense of self-defense.  The following colloquy then occurred:

> [Prosecutor]: I know that the standard [of
> proof] is incredibly low of it being a scintilla of
> evidence, and so I don't think the People can in
> good faith dispute that there's contradictory
> testimony including the defendant's
> statements. . . .
>
> [COURT]: Counsel, any objection to the
> self-defense instruction [that was tendered by
> the prosecution] and its applicability to . . .
> first, second and third degree assault?
>
> [PROSECUTOR]: No, Your Honor.
>
> [COURT]: [Defense counsel?]
>
> [DEFENSE COUNSEL]: Your Honor, I believe
> this to be a correct statement of the law, so I
> don't have any objection.
>
> [COURT]: Thank you.

¶ 8     The court instructed the jury:

> It is an affirmative defense to the crime of
> Assault in the First Degree . . . *that the
> defendant used deadly physical force* upon [the
> victim]:
>
> 1. In order to defend himself or a third person
> from what he reasonably believed to be the use
> or imminent use of unlawful physical force by
> the other person,

2. He used a degree of force which he reasonably believed to be necessary for that purpose, and

3. He reasonably believed a lesser degree of force was inadequate, and

4. Had reasonable grounds to believe, and did believe that he or another person was in imminent danger of being killed or of receiving great bodily injury.

(Emphasis added.)

¶ 9 Further, the elemental instruction for first degree assault referenced the "deadly physical force" instruction by saying, "without the affirmative defense [specified] in instruction number 29." The jury was not instructed on the definition of "deadly physical force."

¶ 10 "'Deadly physical force' means force, the intended, natural, and probable consequence of which is to produce death, *and which does, in fact, produce death.*" § 18-1-901(3)(d), C.R.S. 2018 (emphasis added); *see also People v. Ferguson,* 43 P.3d 705, 708 (Colo. App. 2001) ("If the force used by the defendant does not cause death, by definition it cannot be deadly physical force."); CJI-Crim. 5:01, 5(9) (1983) (incorporating statutory definition of "deadly physical force"); CJI-Crim. 7:17 (1983) (self-defense instruction

4

concerning deadly physical force "should only be used if the victim dies").

¶ 11    Without question, it was error for the court to instruct the jury on deadly physical force because defendant was not accused of causing death.  By giving an inapplicable instruction, and incorporating it into the elemental instruction for first, second, and third degree assault, the court would have caused the jury to have an incorrect understanding of the elements of those charges.

## II. Waiver or Forfeiture

¶ 12    In *Ramirez I*, the division concluded that Ramirez, through his counsel, had waived this instructional error.  That conclusion focused on defense counsel's statement, "I believe this to be a correct statement of the law, so I don't have any objection." Applying *Rediger* and the supreme court's recent decision in *People v. Smith*, 2018 CO 33, we now conclude that this statement did not amount to waiver and was, instead, a forfeiture.

¶ 13    According to *Rediger*, "[w]aiver, in contrast to invited error, is "the *intentional* relinquishment of a *known* right or privilege." *Rediger*, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)).  Courts are not to "presume acquiescence in the

5

loss of fundamental constitutional rights, and therefore [must] indulge every reasonable presumption against waiver." *Id.* (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)).

¶ 14    We see no indication in the record that defense counsel recognized the error in application of the deadly force jury instruction.  There would be no rational, strategic reason for the defense to want such an erroneous instruction to be given.  Indeed, counsel's expression that he believed the instruction to be "a correct statement of the law" shows that he failed to notice that it was an *incorrect* statement of the law *as applied* to the first, second, and third degree assault charges in this case.  *Cf. People v. Stewart*, 55 P.3d 107, 119 (Colo. 2002) (stating that a nontactical instructional omission is reviewable for plain error).

¶ 15    And as we have discussed, the error would have caused the jury to misunderstand the elemental jury instruction for first degree assault, which referenced the "affirmative defense [specified in erroneously phrased] instruction number 29."

¶ 16    Given that we are to indulge every reasonable presumption against waiver, we conclude that counsel did not waive the instructional error.  *See id.*; *see also Smith*, ¶ 18 (finding no waiver

6

of instructional error where "the record before us reveals no evidence that [the defendant], by stating that the instructions generally were 'acceptable' to him, intended to relinquish a known variance claim").

¶ 17      "Forfeiture" is "the failure to make the timely assertion of a right." *Rediger*, ¶ 40. *Rediger* cited *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007), for the proposition that "waiver is accomplished by intent, [but] forfeiture comes about through neglect."

¶ 18      Defense counsel's failure to perceive and address the error in the instruction was patently attributable to neglect, and we therefore conclude that the instructional error was not waived, but merely forfeited. *See Rediger*, ¶ 44 ("In these circumstances, we conclude that neglect, not intent, explains Rediger's lack of an objection . . . . Accordingly, in our view, Rediger's acquiescence amounts to a forfeiture, not a waiver.").

¶ 19      In contrast with the dissent, we are not convinced that *Rediger* is distinguishable on the basis that defense counsel there stated that the instructions as a group were acceptable, whereas defense counsel here accepted a specific instruction. By accepting all the

7

instructions, defense counsel in *Rediger* had accepted the included elemental instruction. Nevertheless, our supreme court said, "[t]he record before us reveals no evidence, either express or implied, that Rediger intended to relinquish his right to be tried in conformity with the charges . . . ." *Id.* at ¶ 42.

¶ 20 *People v. Kessler*, 2018 COA 60, does not change our view. There, the division acknowledged *Rediger*, but distinguished it because, in *Kessler*, "defense counsel did more than generally acquiesce or fail to object. Defense counsel explicitly agreed that the specific evidence at issue was admissible." *Id.* at ¶ 37. The circumstances of *Kessler* are unlike those here, where Ramirez's counsel showed no understanding that the jury instruction was inapplicable. And as the division acknowledged in *Kessler*, that case did not involve an elemental jury instruction. *Id.* But this case does.

¶ 21 The division in *People v. Tee*, 2018 COA 84, ¶ 23, also distinguished *Rediger*, explaining that "the record before us shows that the trial court and defense counsel were involved in an ongoing, interactive exchange." *See also People v. Murray*, 2018

COA 102, ¶ 44 ("Defense counsel therefore clearly affirmatively acquiesced in the admissibility of the Montana judgment.").

¶ 22　There is no such indication in the record here. Instead, the entire jury instruction conference — which dealt with thirty-seven jury instructions for charges that were originally brought in four separate cases — takes up only five pages of the trial transcript. Defense counsel's statement that he thought the instruction correctly stated the law was made in one brief sentence.

¶ 23　The record shows defense counsel's apparent lack of awareness of the error that was baked into the instruction. *Cf. People v. Allgier*, 2018 COA 122, ¶¶ 4-28 (holding that defense counsel did not waive for appellate review a CRE 403 argument regarding the admission of certain exhibits even though defense counsel said "no objection" when the prosecution moved to introduce them because the "record [did] not foreclose the possibility that defense counsel overlooked the possible prejudice . . . ."). Under these circumstances, we cannot conclude that counsel intentionally relinquished a known right on defendant's behalf.

¶ 24    Instead, counsel's conduct amounted to a forfeiture, and, as a

result, we must proceed to review the error for plain error.  *Rediger*,

¶ 44; *Smith*, ¶¶ 18, 22.

III. Plain Error Review

¶ 25    We conclude that the court committed plain error, and that we

must reverse his first degree assault conviction as a result.

¶ 26    Plain error is obvious and substantial error that so

undermined the fundamental fairness of the trial itself as to cast

serious doubt on the reliability of the judgment of conviction.

*Hagos v. People*, 2012 CO 63, ¶ 14.

¶ 27    The error in the instruction was indeed obvious.  Giving the

deadly force instruction where the alleged victim did not die

contravened the applicable statute, § 18-1-901(3)(d); case law,

*Ferguson*, 43 P.3d at 708; and pattern jury instruction, CJI-Crim.

5:01, 5(9) (1983); CJI-Crim. 7:17 (1983).

¶ 28    The error was also unfairly prejudicial.  As in *Ferguson*, the

failure to instruct on the non-deadly, ordinary use of force

"permitted [the jury] to hold [the] defendant to a higher standard in

establishing self-defense than is required by law."  43 P.3d at 708;

*see also People v. Vasquez*, 148 P.3d 326, 330 (Colo. App. 2006) ("In

10

restricting the jury's consideration to only the most stringent conditions under which a claim of self-defense could be established, the trial court committed prejudicial error.").

¶ 29 As a result, we must reverse defendant's conviction of first degree assault.

## IV. Incorporation of *Ramirez I* as to Other Issues

¶ 30 The resolution of this appeal on all other issues discussed in *Ramirez I* is unaffected by the supreme court's remand order. As a result, that opinion stands as to those other issues, and we incorporate herein those parts of *Ramirez I* addressing the other issues.

## V. Conclusion

¶ 31 The judgment of conviction of first degree assault is reversed, and the case is remanded for a new trial as to that charge. In all other respects, the judgment is affirmed.

JUSTICE MARTINEZ concurs.

JUDGE WEBB dissents.

JUDGE WEBB, dissenting.

¶ 32    In law, as in life, "[o]n the question you ask depends the answer you get." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 484 (1948) (Frankfurter, J., dissenting).

¶ 33    Following the mandate to consider *People v. Rediger*, 2018 CO 32, the majority asks whether defense counsel thought about the deadly physical force language in the self-defense instruction before endorsing that instruction. The majority then sees "no indication in the record that defense counsel recognized the error in application of the deadly force jury instruction," *supra* ¶ 14, and on that basis "cannot conclude that counsel intentionally relinquished a known right on defendant's behalf," *supra* ¶ 23. But *Rediger* does not, in my view, mandate a subjective inquiry into whether counsel thought about the *reason* why an instruction might be flawed, so long as the record shows that counsel specifically agreed that the particular instruction challenged on appeal should have been given.

¶ 34    So, I ask whether defense counsel knowingly and intentionally assented to the self-defense instruction being given. After the trial court asked the lawyers if they wanted to make a "record regarding the self-defense instructions or self-defense issues," defense counsel

12

said of the self-defense instruction, "Your Honor, *I believe this to be a correct statement of the law*, so I don't have *any* objection." (Emphasis added.) Because this statement — far from a mere rote response — constitutes a knowing and intentional waiver of any error in giving the self-defense instruction, I would affirm.

¶ 35     Therefore, and with respect, I dissent.

## I. Instructional Error

¶ 36     According to the majority, under cases such as *People v. Ferguson*, 43 P.3d 705, 708 (Colo. App. 2001), reversal is required because the trial court incorrectly instructed the jury on the use of deadly force — which requires that the force produce death — and in doing so held the prosecution to a lower standard for disproving self-defense than if the jury had been instructed on ordinary force. Because of defense counsel's waiver, I do not address error, plain or otherwise, in the instruction. *See People v. Bryant*, 2013 COA 28, ¶ 13 n.2 ("[A] 'waived' claim of error presents nothing for an appellate court to review." (quoting *People v. Rodriguez*, 209 P.3d 1151, 1160 (Colo. App. 2008))).

## II. Waiver After *Rediger* and *Smith*

¶ 37    In *Rediger*, ¶¶ 3, 10, our supreme court held that a defendant's attorney had not waived a challenge to an elemental instruction by responding, "Yes. Defense is satisfied," when the trial court asked whether counsel was "satisfied with the instructions," all of which the prosecutor had prepared. The court reasoned that such "mere acquiescence" to the instructions as a group was not enough to show "an intentional relinquishment of a known right." *Id.* at ¶¶ 3, 39-44. Similarly, in *People v. Smith*, 2018 CO 33, ¶¶ 17-21, announced concurrently with *Rediger*, the supreme court concluded that waiver did not apply when defense counsel said of the proposed jury instructions, "[t]hey are acceptable, Judge." *Id.* at ¶ 6.

¶ 38    Thus, *Rediger* and *Smith* differ from this case in two important ways.

¶ 39    First, in both cases, the trial court did not solicit defense counsel's position on the specific instruction belatedly challenged on appeal. *See United States v. Hamilton*, 499 F.3d 734, 736 (7th Cir. 2007) (The court declined to find a waiver because "while the judge invited objections he didn't ask the defendant's lawyer

14

whether the lawyer agreed to the instructions to which he did not object, or ask the lawyer specifically about the intent instruction."). In contrast, here the court specifically asked, "Counsel, any objection to the self-defense instruction and its applicability to both first, second and third degree assault?" *See People v. Perez-Rodriguez*, 2017 COA 77, ¶ 28 ("Assuming that the statement 'no objection' was the response to an inquiry about specific language or a specific instruction, the circumstances might support deliberate conduct.").

¶ 40    Second, in both cases, defense counsel gave a generic — "satisfied" and "acceptable" — response, equally applicable to all of the tendered instructions.  This response could well have been merely a "rote statement that [counsel] is not objecting . . . ." *United States v. Zubia-Torres*, 550 F.3d 1202, 1207 (10th Cir. 2008) (cited with approval in *Rediger*, ¶ 45).  Yet here, defense counsel gave an instruction-specific response: "I believe this [instruction] to be a correct statement of the law." *See United States v. Soto*, 799 F.3d 68, 96 (1st Cir. 2015) (The court found the instructional contention was waived where "the district court informed the Sotos exactly how it was planning to instruct the jury on good faith and

condonation — instructions Carmen and Steven had explicitly requested — and sought their feedback, twice asking if they were okay with those specific instructions.").

¶ 41     By any reckoning, the records in both cases created reasoned doubt whether defense counsel had specifically assented to the particular instructions challenged on appeal.  Not so here.

### III.  Application

¶ 42     Because questions of waiver "are necessarily fact-specific," *People v. Harlan*, 54 P.3d 871, 879 (Colo. 2002), some variability exists among different divisions' treatment of *Rediger*, *see People in Interest of A.V.*, 2018 COA 138M, ¶ 13 (collecting cases).

¶ 43     In *People v. Kessler*, 2018 COA 60, ¶ 37, the division distinguished *Rediger* because "defense counsel did more than generally acquiesce or fail to object.  Defense counsel explicitly agreed that the specific evidence at issue was admissible."  The division in *People v. Tee*, 2018 COA 84, ¶ 23, also distinguished *Rediger* because "the record before us shows that the trial court and defense counsel were involved in an ongoing, interactive exchange." *See also People v. Murray*, 2018 COA 102, ¶ 44 (While citing *Rediger*, the division held that "[d]efense counsel therefore clearly

affirmatively acquiesced in the admissibility of the Montana judgment.").

¶ 44     Because *Tee* differs from *Kessler* and *Murray*, these cases warrant a closer look.  In *Tee*, the trial court, the prosecutor, and defense counsel had specifically discussed the predeliberation issue raised on appeal.  But here, whether anyone said anything about the deadly physical force language before defense counsel endorsed the self-defense instruction is unknown.

¶ 45     Neither *Kessler* nor *Murray* describes any similar colloquy. Instead, when presented with the evidence, defense counsel responded that it was admissible.  The divisions did not shy away from finding waivers by pondering whether counsel had considered the *reasons* raised on appeal as to why the evidence should not have been admitted.  Rather, as here, defense counsel faced a binary choice: either object or acquiesce.  And as here, because counsel chose the latter, giving the instruction cannot be challenged on appeal.

¶ 46     I discern no principled difference between admitting evidence and giving an instruction.  In both circumstances, multiple reasons may be worth considering before counsel acts.  Still, regardless of

what counsel subjectively contemplates, if counsel objectively acquiesces, the evidence comes in or the instruction is given. And asking whether counsel subjectively considered *all* such reasons disregards the principle that "[s]ociety has an interest in the finality of court determinations that should not be lightly put aside." *Stroup v. People*, 656 P.2d 680, 684 (Colo. 1982).

¶ 47 Fine-tuning waiver remains problematic because neither *Rediger* nor *Smith* cited, much less distinguished, *Stackhouse v. People*, 2015 CO 48, ¶¶ 16-17 ("Defendants in Colorado affirmatively waive their right to public trial by not objecting to known closures," although what counsel knew was not based on anything that the court and counsel had discussed, but on a "presum[ption] that attorneys know the applicable rules of procedure.") (citation omitted). Even without regard to *Stackhouse*, however, the case before us is more like *Kessler* and *Murray* than it is like *Rediger* and *Smith*. While I am not bound by the decisions of other divisions, "we give such decisions considerable deference." *People v. Smoots*, 2013 COA 152, ¶ 20, *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.

18

¶ 48　　After all, the trial court specifically asked defense counsel for his position on the self-defense instruction as well as on "self-defense issues." In response, counsel did not just renounce "any objection," as in *Kessler* and *Murray*. Counsel went further and explained his rationale — that the instruction was a "correct statement of the law." Whether counsel was wrong is the province of an ineffective assistance claim under Crim. P. 35(c).

¶ 49　　Despite all of this, is waiver precluded because what was on defense counsel's mind when he unambiguously acquiesced is unknown? The majority says "yes" because waiver must be "the *intentional* relinquishment of a *known* right or privilege." *Rediger*, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). For three reasons, I say "no."

¶ 50　　First, the knowing and intentional standard for a waiver by defense counsel differs from the "voluntary, knowing, and intelligent" test for waiver by a defendant. *See, e.g., Sanchez v. People*, 2014 CO 56, ¶ 11. Such a waiver "is intelligent if the defendant is 'fully aware of what he is doing and . . . make[s] a conscious, informed choice to relinquish the known right.'" *People v. Walker*, 2014 CO 6, ¶ 16 (alteration in original) (citation omitted).

Had the *Rediger* court intended to condition waiver on plumbing the depths of defense counsel's awareness, the court would have included "intelligent" in the formulation. Unsurprisingly, it did not. *See Hinojos-Mendoza v. People*, 169 P.3d 662, 670 (Colo. 2007) ("[W]e presume that attorneys know the applicable rules of procedure," and we thus "can infer from the failure to comply with the procedural requirements that the attorney made a decision not to exercise the right at issue."); *see also Cropper v. People*, 251 P.3d 434, 436-37 (Colo. 2011) (In *Hinojos-Mendoza* "we held that defense counsel's failure to request live testimony from the technician was a valid waiver of the defendant's confrontation right *even though the attorney did not have actual knowledge of section 16-3-309(5)'s requirements*.") (emphasis added)).

¶ 51    Second, I look at knowledge. Because defense counsel argued to the trial court that the evidence met the low standard for giving a self-defense instruction, he knew that he was entitled to such an instruction. And because, after having successfully argued for a self-defense instruction, he acknowledged that the particular instruction proposed was a correct statement of the law, he also knew that he was entitled to a self-defense instruction that was

appropriate for the case being tried. *See* Black's Law Dictionary 1737 (9th ed. 2009) (defining "knowing" as "showing awareness or understanding").

¶ 52    Third, I look at intent. Counsel could have objected to giving the instruction, asked for different language, or acquiesced in giving it. He unambiguously acquiesced. How much or how little thought counsel gave to possible flaws in the instruction does not defeat intentionality. *See* Black's Law Dictionary 883 (defining "intentional" as "[d]one with the aim of carrying out the act").

¶ 53    Despite defense counsel's clear choice, the majority parses his acquiescence in giving the instruction as opposed to his acquiescence in the deadly force language. But appellate courts "do not require the defendant to expressly state on the record his intent to waive a challenge before we will consider it waived . . . and such an express statement is rare." *United States v. Garcia*, 580 F.3d 528, 542 (7th Cir. 2009). I have not found any authority conditioning waiver on the outcome of an inquiry into whether defense counsel recognized every reason why an instruction might be inappropriate, at least where, as here, counsel affirmatively

endorses a particular instruction in response to a trial court's specific question about counsel's position on that instruction.

¶ 54 Closest to such an inquiry is a line of First Circuit cases summarized in *United States v. Corbett*, 870 F.3d 21, 30-31 (1st Cir. 2017). The court explained that "when the 'subject matter [is] unmistakably on the table, and the defense's silence is reasonably understood only as signifying agreement that there was nothing objectionable,' the issue is waived on appeal." *Id.* (citations omitted).

¶ 55 Applying this test here, defendant's right to a self-defense instruction and the wording of that instruction were "on the table." *See id.* (citations omitted). Defense counsel persuaded the trial court to give such an instruction and then acquiesced in the language to be used. In my view, the inquiry should end there.

¶ 56 Going further to ponder whether defense counsel considered potential reasons why the instruction might be flawed demands too much. Suppose an instruction was flawed for two independent reasons, one of which was discussed among counsel and the trial court before defense counsel agreed that the instruction be given. Could appellate counsel avoid waiver by arguing that the other

reason warrants reversal and the record did not show that trial counsel had considered it?

¶ 57    Still, the majority points out that "[t]here would be no rational, strategic reason for the defense to want such an erroneous instruction to be given." *Supra* ¶ 14.  But this observation conflates waiver with invited error by assuming that inquiry into counsel's strategic purpose plays the same role in ignoring an affirmative waiver that it does in declining to apply invited error.  *See Rediger*, ¶ 34 ("Invited error is a narrow doctrine and applies to errors in trial strategy but not to errors that result from oversight.").  I am unaware of any Colorado authority tempering the effect of an affirmative waiver based on possible or even apparent lack of a strategic purpose.

¶ 58    Finally, everyone would agree that reversing a conviction and retrying the case carry "substantial social costs." *United States v. Mechanik*, 475 U.S. 66, 72 (1986); *see People v. Sepulveda*, 65 P.3d 1002, 1008 (Colo. 2003).  So, who better than the trial court to protect the verdict against the risk of reversal by affording defense counsel a fair opportunity to object?  *See Martinez v. People*, 2015 CO 16, ¶ 14 ("An adequate objection allows the trial court a

23

meaningful chance to prevent or correct the error and creates a record for appellate review."). But to do so, must the court ask defense counsel what he or she is thinking? Worse, must the court prime the pump by suggesting to counsel gray areas about which counsel should be thinking?

¶ 59 Here, the trial court sought to avoid those costs by broadly inviting defense counsel to address the instruction and related issues. With equal breadth, counsel replied, "I don't have any objection." Neither due process nor common sense could require greater effort by the trial court. Yet, if the integrity of a verdict depends not on what defense counsel says but on what counsel is thinking at the time, such efforts can always be thwarted by imaginative appellate counsel with the luxury of time to develop arguments that trial counsel may not have considered. If so, then in the end reversal leaves the trial court wondering, "what more could I have done?"

IV. Conclusion

¶ 60 I would affirm the judgment.